**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| BELINDA K., | ) | Case No.: 10-CV-05797-LHK |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING MOTIONS TO DISMISS[1] |
| COUNTY OF ALAMEDA et al., | ) | |
| Defendants. | ) | |

I.      INTRODUCTION

On December 21, 2010, Belinda K. (Plaintiff), proceeding pro se, filed a complaint alleging 20 causes of action against 23 named defendants on behalf of herself and her minor son, J.H.  *See* Compl. (Dkt. No. 1).  Plaintiff's Complaint alleges that her minor son was taken from her custody on the basis of falsified, misleading and incomplete information [REDACTED].  Based on these allegations, Plaintiff asserts constitutional violations and violations of the Indian Child Welfare Act (ICWA, 25 U.S.C. §§ 1901 et seq.) via 42 U.S.C. § 1983, as well as a number of claims arising under state law such as malicious prosecution, intentional infliction of emotional distress, invasion of privacy, and attorney malpractice.  At the same time Plaintiff filed the Complaint in this case, she filed an identical complaint in the Superior Court for the County of Alameda.  The second

---

[1] This Order has been redacted to remove confidential information, pursuant to Civil Local Rule 79-5.  A nonredacted Order has been filed under seal and served on the parties.

1    complaint was removed to this Court by some of the defendants, and subsequently related to and

2    consolidated with the above-captioned case.  *See* Dkt. No. 86.

3          Seven different groups of defendants (collectively, "Defendants") filed motions to dismiss

4    the complaint.  The Defendants are grouped as follows.  "County Defendants" include Alameda

5    County; social workers Mary Chew, Linda Fuchs, Tracy Fernandez, and Bruce Jackson; former

6    Alameda County Counsel Richard E. Winnie (now deceased); and Alameda County Department of

7    Social Services Director Yolanda Baldovinos.  County Defendants' motion to dismiss was joined

8    by the "City Defendants," including the City of San Leandro and City of San Leandro Police

9    Department employees Officer Wong, Detective Luis Torres, Sergeant Decosta, and Kamilah

10   Jackson.  A separate motion to dismiss was filed by "Plaintiff's Counsel Defendants," including

11   Patrick O'Rourke, Cheryl Smith, and Dennis Reid (three of Plaintiff's appointed attorneys).  A

12   third motion to dismiss was filed by "J.H.'s Counsel Defendants," including the Alameda County

13   Public Defender's Office and attorney Shanna Noel Connor (former appointed counsel for J.H. in

14   the state court dependency proceedings).  A fourth motion to dismiss was filed by defendant Geri

15   Isaacson ("Isaacson"), J.H.'s elementary school principal.  A fifth motion to dismiss was filed by

16   Lezley Crowell ("Crowell"), who also served as appointed counsel for Plaintiff.  A sixth motion to

17   dismiss was filed by the Alameda County Bar Association.  A seventh motion to dismiss was filed

18   by EMQ Families First, Inc. ("EMQ").  An eighth motion to dismiss was filed by "EBCLO

19   Defendants," the East Bay Children's Law Offices and Jonna Thomas (currently appointed counsel

20   for J.H. in the ongoing dependency proceedings in state court).

21          Plaintiff filed one opposition to all of the motions, except for the EBCLO Defendants'

22   motion, which was not timely served on Plaintiff.  Dkt. No. 126 (Opp'n).  In response, all

23   Defendants other than EBCLO filed reply briefs.  Plaintiff responded with a sur-reply.  Dkt. No.

24   133.  The City Defendants moved to strike Plaintiff's sur-reply.  Dkt. No. 136.  Although Plaintiff

25   did not move for leave to file the sur-reply, and it was therefore improperly filed, the Court will not

26   strike it and has reviewed it because of Plaintiff's pro se status.  In the future, however, Plaintiff

27   must follow the Civil Local Rules and move for leave to file any sur-reply (unless otherwise

28

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

permissible under Civil Local Rule 7-3(d)).  Accordingly, the City Defendants' motion to strike is DENIED.

For the reasons set forth below, the Court GRANTS Defendants' Motions to Dismiss with leave to amend as specified.

II.    BACKGROUND

The Court summarizes the relevant allegations from Plaintiff's Complaint as follows.[2]  Plaintiff is the mother of J.H., a minor.  J.H. is an Indian child as defined by the Indian Child Welfare Act (ICWA), and both J.H. and Plaintiff are registered members of the Cow Creek Band of the Umpqua Tribe of Native Americans.  On December 19, 2006, when J.H. was seven years old, [REDACTED].  Based on this information, employees of the San Leandro Police Department including Officers Wong, Jackson and DeCosta removed J.H. from his school and brought him to an Alameda County Department of Social Services Assessment Center.  Compl. ¶¶ 12-13.  The police removed J.H. from school and placed him in foster care without a warrant and based only on Isaacson's account of J.H.'s statements about abuse.  Compl. ¶¶ 12, 27.  After removing him, the police questioned J.H. without the presence or consent of his mother or other guardian.  Compl. ¶ 18.  Plaintiff alleges that J.H. later made statements inconsistent with Isaacson's account at the "CALICO" (Child Abuse Listening, Interviewing and Coordination Center) Interview.  Plaintiff does not allege when this interview took place.  Compl. ¶ 28.

On December 21, 2006, the Alameda County Health and Human Services Agency ("Agency") filed a petition in Alameda County Superior Court ("Superior Court") alleging that J.H. was a child described by section 300(c) of the California Welfare and Institutions Code.  Compl. ¶ 20.  The petition stated that J.H. was suffering or at substantial risk of suffering serious emotional damage [REDACTED].  Compl. ¶ 20.  Plaintiff alleges that the petition did not contain any specifics regarding her conduct.  *Id.*  On December 22, 2006, the Superior Court held a detention hearing, and Crowell was appointed counsel for Plaintiff.  Compl. ¶ 31.

---

[2] Plaintiff's Complaint references a declaration and numerous attachments, but no declaration or attachments were filed.  Although Plaintiff submitted a Request for Judicial Notice (RJN) in connection with her opposition to the motions to dismiss, it appears that many of the documents referenced in the Complaint are not attached to the RJN, either.

3

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

On January 2, 2007 the Superior Court held a jurisdictional hearing on the petition. The Agency filed and served a Report the same day.  Compl. ¶ 34.  Plaintiff alleges that the January 2, 2007 Agency Report contained misrepresentations, including that the Board of Indian Affairs had been notified but that Plaintiff's tribe had not been contacted, and that there was an ongoing police investigation awaiting the results of an exam of J.H. before bringing the case to the District Attorney.[3]  Compl. ¶ 32.   Plaintiff claims that the County Counsel representative at the hearing made an admission that the Court lacked jurisdiction over the petition, but that her attorney did not follow up or ask questions about this.  Compl. ¶ 37.  At the hearing, Plaintiff signed a waiver wherein she pleaded no contest to the allegations in the petition.  Compl. ¶ 38.

Plaintiff claims she did not meet with Crowell until just before the hearing began despite her efforts to meet beforehand.  Compl. ¶ 31.  Plaintiff further claims that she signed the waiver form during a recess in the hearing while being pressured by Crowell to sign, and that Crowell did not explain the consequences of signing the form or that "if the court were to find the petition to be true, that [Plaintiff] would have difficulty getting her child back unless she admitted [REDACTED]."  Compl. ¶¶ 35, 98.h.  Plaintiff claims that her waiver "did not comply with the procedural requirements for a 'knowing and intelligent' waiver because the Superior Court did not comply with the California Rules of Court in accepting it."  Compl. ¶ 39.  At the January 2, 2007 hearing, the Superior Court found that J.H. was a dependent child as described by section 300, and that he should remain in foster care.  After the hearing, Plaintiff alleges that she was "intercepted in the hallway" by defendant Fuchs, an Agency social worker, who presented her with a release form for a [REDACTED] exam for J.H., which Plaintiff signed.  Compl. ¶ 40.  Plaintiff alleges that she did not possess the authority to sign the form in light of the outcome of the hearing, and that in any event it should have been presented to attorney Crowell rather than directly to Plaintiff.  *Id.*

On January 16, 2007, the Superior Court held a hearing and noted that notice had not been provided to Plaintiff's tribe pursuant to ICWA.  Compl. ¶ 41.  Crowell stated that Plaintiff "is contesting this whole recommendation" and that she "wants her child back in her home."  Compl. ¶

---

[3] It is not clear from the Complaint which of these statements is false or upon what basis Plaintiff alleges that they are false.

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

43.  Accordingly, the matter was re-set for a contested dispositional hearing on April 5, 2007.

Compl. ¶ 45.  Also on January 16, 2007, J.H. was examined by a doctor at "Children's Hospital."

Compl. ¶ 44.  Plaintiff alleges that this exam was an illegal search in violation of the Fourth

Amendment.  Plaintiff alleges that Fuchs submitted false information to the doctor in advance of

the exam, stating that J.H. disclosed during the CALICO interview that [REDACTED], but that the

CALICO tapes prove that J.H. never said this.  Compl. ¶ 52.  Plaintiff claims that the exam

revealed no signs of [REDACTED] abuse.  *Id.*

On April 5, 2007, the Superior Court held a dispositional hearing.  Plaintiff claims that

there was still no proof of notice to her tribe and that the Court granted "a 30 day grace [period]"

for County Counsel to supply this notice.  Compl. ¶ 45.  However, Plaintiff also alleges that a

Tribal Representative from her tribe, Rhonda Malone, appeared at the hearing.  Compl. ¶ 46.

Plaintiff alleges that Ms. Malone testified that she did not know what was going on in the case, and

only agreed to recommend that J.H. should be removed from Plaintiff's custody because she was

asked to assume that the facts in the Report were true.  Compl. ¶ 50.  At the dispositional hearing,

the Superior Court concluded that J.H. should remain a dependent child in the custody of the state.

Compl. ¶ 53.  J.H. is still living in foster care.  His placement has been reviewed by the Superior

Court approximately every six months since his initial placement.  *See* Compl. ¶¶ 54-83.

Throughout the Superior Court proceedings, Plaintiff has been represented by a series of

court-appointed counsel, and J.H. has been represented by separate appointed counsel.  *Id.*

Plaintiff alleges that throughout the Superior Court proceedings, including the six month status

reviews, all appointed counsel have failed to adequately represent Plaintiff and her son, because

they have refused to communicate with their clients, file pleadings on their clients' behalf, and

investigate the facts of the case and Plaintiff's defense.  Compl. ¶¶ 54-83, 89-94.  Plaintiff asserts

that appointed counsel have served only as "bare counsel" throughout these proceedings, appearing

in court but nothing more.  *Id.*  Plaintiff attributes these failures to the policies of Alameda County,

which provided inadequate compensation for appointed counsel and overloaded them with cases

such that their representation was not competent.  Compl. ¶¶ 164-170.

5

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   On June 11, 2010, before filing the underlying complaint, Plaintiff attempted to remove the

2   ongoing status reviews from the Superior Court proceedings to this Court, and filed a Petition for

3   Habeas Corpus seeking injunctive relief and J.H.'s return to Plaintiff's custody. *See J.H. v.*

4   *Baldovinos*, No. 10-cv-02507 (N.D. Cal.). The Court found that Plaintiff could not file a habeas

5   petition on the stated grounds, and could not remove the underlying status reviews from Superior

6   Court. However, Plaintiff's claims for violation of ICWA at the initial child custody proceedings

7   are still pending. At the recommendation of this Court, Plaintiff was referred to the Pro Bono

8   Project of Silicon Valley and pro bono counsel have appeared on Plaintiff's behalf in that case.[4]

9   ### III.   LEGAL STANDARD

10   Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if

11   it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the

12   plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

13   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the

14   plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

15   unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether the plaintiff has

16   stated a claim, the court must assume the plaintiff's allegations are true and draw all reasonable

17   inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

18   However, the court is not required to accept as true "allegations that are merely conclusory,

19   unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

20   F.3d 1049, 1055 (9th Cir. 2008). Leave to amend must be granted unless it is clear that the

21   complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corr.*, 66 F.3d 245,

22   248 (9th Cir. 1995). The rule favoring liberality in granting leave to amend is particularly

23   important for pro se litigants. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

24

25

26   _____

[4] Plaintiff makes several references in her briefing to her hope that the Court will recommend

27   appointment of pro bono counsel in this matter as well. The Court does not believe this case
     warrants appointment of pro bono counsel, and will not make this recommendation. The Plaintiff

28   may always consult the Federal Legal Assistance Self-Help Center located on the Fourth Floor of
     the San Jose courthouse (telephone 408-297-1480).

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

IV.    APPLICATION

A.  Claims Brought on Behalf of J.H.

Several defendants argue that Plaintiff cannot sue on behalf of her son.  Under Rule 17(c)(1)(A), a general guardian may sue on a minor's behalf.  If a minor does not have a general guardian or other qualifying representative to sue on his behalf, "[a] minor . . . may sue by a next friend or by a guardian ad litem."  Fed. R. Civ. P. 17(c)(2).  The minor's guardian ad litem must be appointed by the court.  *See id.*; *see also Castillo-Ramirez v. County of Sonoma*, No. C-09-5938 EMC, 2010 U.S. Dist. LEXIS 35076, at *2 (N.D. Cal. Apr. 9, 2010) ("[A] court must formally appoint the guardian ad litem to protect the unrepresented minor.") (citations omitted).[5]

Plaintiff filed the instant lawsuit on behalf of herself and as next friend for J.H., a minor.  While a parent can move the Court to be appointed as a guardian ad litem, such an appointment is improper if there is a conflict of interest between the parent and child.  "[I]f the parent has an actual or potential conflict of interest with his child, the parent has no right to control or influence the child's litigation."  *Williams v. Super. Ct.*, 54 Cal. Rptr. 3d 13, 23 (Cal. App. 2007).  As alleged in Plaintiff's Complaint, an actual conflict of interest between herself and J.H. has been found by the Superior Court in the dependency proceedings.  Even if the Superior Court had not formally found a conflict of interest, the Complaint shows that a conflict exists.  Therefore, Plaintiff is ineligible to serve as guardian ad litem or next friend to bring claims on behalf of J.H. in this matter.

Even if an appropriate guardian ad litem could be identified, the Ninth Circuit has held that a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer.  *Johns v. County of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997) (citing *Osei-Afriyie v. Medical College*, 937 F.2d 876, 882-83 (3d Cir. 1991); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61-62 (2d Cir. 1990); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam)).  According to the Ninth Circuit, "[t]he issue of whether a parent can bring a pro se

---

[5] Under Rule 17(b)(1), an individual's capacity to sue is determined by the law of the individual's domicile. Fed. R. Civ. P. 17(b)(1).  Under California law, minors may not file suit unless a guardian conducts the proceedings.  *See Castillo-Ramirez*, 2010 U.S. Dist. LEXIS 35076, at *2 ("When minors are involved, California Family Code §§ 6502 and 6601 provide that a minor, or an individual under the age of eighteen, may file a civil suit as long as the action is conducted by a guardian.") (citing Cal. Fam. Code §§ 6502, 6601).  Because J.H. has no individual capacity to sue, he can only pursue his claims through a representative.

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1    lawsuit on behalf of a minor 'falls squarely within the ambit of the principles that militate against

2    allowing non-lawyers to represent others in court.'" *Id.* at 877 (quoting *Brown v. Ortho Diagnostic*

3    *Sys., Inc.*, 868 F. Supp. 168, 172 (E.D. Va. 1994)).  Thus, an attorney would need to appear to

4    prosecute J.H.'s claims.

5            Because Plaintiff cannot serve as J.H.'s guardian ad litem and because no attorney has

6    appeared to prosecute the claims brought on behalf of J.H., the Court DISMISSES these claims

7    without prejudice to J.H. bringing these claims through the appropriate means.  *See Johns*, 114

8    F.3d at 877 (dismissing without prejudice complaint brought by a minor's guardian ad litem

9    because no attorney had appeared); *Watson v. County of Santa Clara*, 468 F. Supp. 2d 1150, 1155

10   (N.D. Cal. 2007) (dismissing without prejudice actions brought by plaintiff minors because no

11   guardian ad litem was formally appointed by the court).  Although Plaintiff asserts most claims in

12   her individual capacity, she asserts Counts Three, Four and Five on behalf of J.H. only.

13   Accordingly, the Court will not consider Defendants' other arguments as to why Counts Three,

14   Four, and Five should be dismissed.[6]  To the extent any of Plaintiff's other claims are brought on

15   behalf of both J.H. and Plaintiff, they are dismissed as to J.H. without prejudice.  To clarify, the

16   Court dismisses these claims without prejudice to J.H.  However, Plaintiff does not have leave to

17   amend to state any claims as J.H.'s next friend, in light of the conflict of interest between them.[7]

18           Certain defendants were sued based solely on their representation of J.H.  These include

19   Jonna Thomas, Shanna Noel Connor, the Alameda County Public Defender's Office, and the East

20   Bay Children's Law Offices.  Plaintiff is not given leave to amend her claims as to these

21

22

23   _____

     [6] In addition, all subsequent discussion regarding Plaintiff's claims does not apply to J.H.'s claims.
24   This is especially true of the statute of limitations analysis because "[u]nder California law, a
     minor's time in which to file an action is tolled until the time he reaches the age of majority."
25   *Schmidt v. United States*, 2010 WL 2179904, at *11 (E.D. Cal. May 27, 2010) (citing Cal. Civ.
     Proc. Code § 352).
26   [7] In her Opposition, Plaintiff disputes that she cannot serve as next friend to bring claims on behalf
     of J.H., but asks that the Court appoint an attorney to represent him and to "protect him from any
27   potential or actual conflict of interest."  Because the Court finds that Plaintiff cannot serve as next
     friend to J.H., it will not recommend representation of J.H. for pro bono assistance in this case.
28   The Court has appointed a guardian ad litem and counsel for J.H. in the related *J.H. v. Baldovinos*
     case.

                                                      8

1   defendants, as she has not alleged any basis to sue them other than on behalf of J.H. These

2   defendants are DISMISSED with prejudice as to Plaintiff and without prejudice as to J.H.[8]

3                    B.  42 U.S.C. § 1983 Claims Relating to Removal of J.H.

4          "For actions under 42 U.S.C. § 1983, . . . courts apply the forum state's statute of

5   limitations for personal injury actions, along with the forum state's law regarding tolling, including

6   equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Canatella*

7   *v. Van De Kamp,* 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting *Jones v. Blanas,* 393 F.3d 918, 927

8   (9th Cir. 2004)) (quotation marks omitted). In California, the statute of limitations for personal

9   injury actions is two years. *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.,* 509

10  F.3d 1020, 1026 (9th Cir. 2007) (citing *Wilson v. Garcia,* 471 U.S. 261, 266-67 (1985); Cal. Civ.

11  Proc. Code § 335.1).

12         "Federal law determines when a civil rights claim accrues." *Maldonado v. Harris,* 370 F.3d

13  945, 955 (9th Cir. 2004) (citing *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001)). "Generally,

14  the statute of limitations begins to run when a potential plaintiff knows or has reason to know of

15  the asserted injury." *Action Apartment,* 509 F.3d at 1026-27 (quoting *De Anza Properties X, Ltd. v.*

16  *County of Santa Cruz,* 936 F.2d 1084, 1086 (9th Cir. 1991)) (quotation marks omitted). Stated

17  another way, "it is the standard rule that accrual occurs when the plaintiff has a complete and

18  present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato,*

19  549 U.S. 384, 387 (2007) (citations, quotation marks, and brackets omitted). The Ninth Circuit

20  previously addressed the accrual of § 1983 search and seizure claims: "where . . . illegal search and

21  seizure is alleged, the conduct and asserted injury are discrete and complete upon occurrence, and

22  the cause of action can reasonably be deemed to have accrued when the wrongful act occurs."

23  *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir. 1983); *Pearce v. Romeo*, 299 Fed. Appx. 653,

24  655 (9th Cir. 2008) ("An injury from an illegal search and seizure accrues when the act occurs.").

25  ────────────────────────

26  [8] The EBCLO Defendants filed a motion to dismiss, but through inadvertence, did not serve the
     Plaintiff with it when it was filed. Plaintiff moved to strike the EBCLO Defendants' motion as

27  untimely. *See* Dkt. No. 143. Because the Court finds that the EBCLO Defendants must be
     dismissed from this case based on arguments raised by other parties, the Court need not consider

28  the untimely-served motion to dismiss filed by the EBCLO Defendants. Therefore, Plaintiff's
     motion to strike it is DENIED as moot.

                                               9

     Case No.: 10-CV-05797-LHK
     ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

Although this Court has been unable to locate published Ninth Circuit authority addressing the question of when civil rights claims based on child removal accrue, the Sixth Circuit has concluded that they accrue when the child is removed from the parent.  *See Kovacic v. Cuyahoga Cnty Dep't of Children and Family Servs.,* 606 F.3d 301, 307 (6th Cir. 2010).  For example, in *Kovacic*, the plaintiff mother brought substantive and procedural due process claims as well as Fourth Amendment claims based on the removal of her children by the police.  *Kovacic*, 606 F.3d at 307.  The court found that the plaintiff's claim accrued on the day the juvenile court magistrate found probable cause to keep her children in the temporary care of Family Services.  *Id.*  The court rejected the plaintiff's argument that the 10-month removal of her children was a "continuing violation" which did not end until their return to her, because "the precipitating event in this action was the initial removal of her children from her custody on March 26, 2002."  The Court finds the Sixth Circuit's reasoning persuasive.  Therefore, all of Plaintiff's claims based on J.H.'s removal from her custody assert an injury that accrued no later than the day the Superior Court found that J.H. was a dependent child of the state, on January 2, 2007.  Plaintiff has cited no cases in the civil child dependency context where the child's placement outside parental custody was held to be a continuing violation, such that claims relating to the child's removal continue to accrue until the child's return to the parent.  Such a rule would make the two year statute of limitations for civil rights claims meaningless in this context.

Plaintiff filed her Complaint on December 21, 2010.  Because the Court finds that her claims based on removal of J.H. accrued well before December 21, 2008, these claims are time-barred.

                    1.   Counts One, Two, Six and Nine of the Complaint Are Time-Barred

In Counts One and Two, Plaintiff alleges that Officers Wong, Jackson, DeCosta, and Torres—San Leandro City police officers at the time—unlawfully seized J.H. on December 19, 2006 in violation of the Fourth Amendment, and caused him to be searched by a doctor at Children's Hospital on January 16, 2007. Compl. ¶¶106-13.  Similarly, in Count Six, she alleges that Officer Wong unreasonably removed J.H. from her care and control.  Compl. ¶ 128.   In Count Nine, Plaintiff alleges that Alameda County, through the Department of Social Services and the

10

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   Alameda County Counsel's Office, violated her First and Fourteenth Amendment rights to be free

2   from unwanted governmental intrusion into protected relationships.  Compl.  ¶¶ 149-51.  As a basis

3   for this claim, Plaintiff cites the seizure of J.H. and the medical exam performed on J.H. at

4   Children's Hospital.

5        First, the Court finds that under the facts alleged, Plaintiff has no individual right under the

6   Fourth Amendment to challenge the allegedly unlawful seizure or search of her child.  *See Wallis v.*

7   *Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000) (observing that claims of parents for the unlawful

8   seizure of their children "should properly be assessed under the Fourteenth Amendment standard

9   for interference with the right to family association" (citations omitted)).  Although it is at least

10  theoretically possible for a parent to establish standing to bring a Fourth Amendment claim based

11  on the search of a child, the parent must "allege her own distinct injuries" as a result of the seizure

12  to demonstrate standing to bring such a claim.  *J.B. v. Wash. Cnty*, 127 F.3d 919, 928 (10th Cir.

13  1997).  Plaintiff has failed to allege any injury of her own distinct from injury to J.H.  But, more

14  importantly, Plaintiff alleges that at the time J.H. was examined, he was not in her legal custody,

15  and her consent was not required for the examination.  Compl. ¶ 40.  Under these circumstances,

16  the Court finds that Plaintiff cannot assert a violation of her Fourth Amendment rights based on the

17  search or seizure of J.H.  As discussed above, Plaintiff cannot vicariously assert J.H.'s rights.

18  Accordingly, the Fourth Amendment allegations in Counts One and Two are DISMISSED with

19  prejudice (as to claims brought on Plaintiff's own behalf) and without prejudice (as to J.H.'s

20  claims).  Because only Fourth Amendment violations are asserted in Count Two, that claim is

21  DISMISSED with prejudice as to Plaintiff.

22       In Counts One, Six and Nine, Plaintiff asserts that her fundamental liberty interest to be

23  with her son was violated by the wrongful seizure of J.H.  "Parents and children have a well-

24  elaborated constitutional right to live together without governmental interference."  *Wallis v.*

25  *Spencer,* 202 F.3d 1126, 1136 (9th Cir. 2000) (citations omitted).  "That right is an essential liberty

26  interest protected by the Fourteenth Amendment's guarantee that parents and children will not be

27  separated by the state without due process of law except in an emergency."  *Id.*  "[T]he state may

28  not remove children from their parents' custody without a court order unless there is specific,

11

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    articulable evidence that provides reasonable cause to believe that a child is in imminent danger of

2    abuse." *Id.* at 1138 (citations omitted).  "Moreover, the police cannot seize children suspected of

3    being abused or neglected unless reasonable avenues of investigation are first pursued, particularly

4    where it is not clear that a crime has been—or will be—committed." *Id.* (citations omitted).

5    Plaintiff's allegations certainly implicate the liberty interest discussed in the *Wallis* decision.  She

6    alleges that J.H. was unlawfully seized without a court order and without probable cause.  Since

7    that seizure, Plaintiff has been denied the opportunity to live with J.H.  Although, even based on

8    the Complaint, it appears that the Defendants had some cause to seize J.H., "[t]he existence of

9    reasonable cause, and the related questions, are all questions of fact to be determined by the jury."

10   *Id.* (citations omitted).

11        The Court need not, however, determine whether Plaintiff has stated a substantive due

12   process claim.  As outlined above, the "[two year] statute of limitations under § 1983 begins to run

13   when the cause of action accrues, which is when the plaintiffs know or have reason to know of the

14   injury that is the basis of their action." *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San*

15   *Buenaventura,* 371 F.3d 1046, 1052 n.4 (9th Cir. 2004) (quoting *RK Ventures*, 307 F.3d at 1058)

16   (quotation marks and alterations omitted).  Here, Plaintiff had reason to know of J.H.'s seizure and

17   medical exam long before December 21, 2008.  Officer Wong allegedly participated in the seizure

18   of J.H. on December 19, 2006.  Plaintiff alleges that on January 2, 2007 the Superior Court found

19   that the allegations in the petition were true, and declared J.H. a dependent child of the state.  Also

20   on January 2, 2007, Plaintiff signed a consent form regarding J.H.'s medical exam.  J.H. was

21   examined on January 16, 2007.  These events all occurred almost four years prior to Plaintiff filing

22   her complaint.  Therefore, as currently pled, these claims are time-barred.  For the reasons stated

23   below, the statute of limitations on these claims cannot be tolled.

24        Plaintiff does not dispute that the events giving rise to Counts One, Six and Nine occurred

25   more than two years prior to the filing of her complaint, but argues that these claims are not subject

26   to dismissal because she has alleged ongoing misconduct.  Plaintiff is correct that in certain

27   circumstances, the "very nature" of a claim "involves repeated conduct." *National R.R. Passenger*

28   *Corp. v. Morgan,* 536 U.S. 101, 115 (2002) (citation omitted).  For such claims, a plaintiff can

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   adequately plead an ongoing violation by showing "a systematic policy or practice that operated, in

2   part, within the limitations period—a systematic violation." *Mansourian v. Regents of the Univ. of*

3   *Cal.,* 594 F.3d 1095, 1110 (9th Cir. 2010) (quoting *Douglas v. Cal. Dep't. of Youth Auth.,* 271 F.3d

4   812, 822 (9th Cir. 2001) (quotation marks and footnote omitted).  Nevertheless, "[d]iscrete acts are

5   not actionable if time-barred, even if related to acts alleged in timely filed charges." *Cholla Ready*

6   *Mix, Inc. v. Civish,* 382 F.3d 969, 974 (9th Cir. 2004) (citing *Morgan,* 536 U.S. at 113-14;

7   *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822, 828-29 (9th Cir. 2003);

8   *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061-62 (9th Cir. 2002)).  Furthermore, "[a]

9   continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an

10  original violation." *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1981) (citing *Collins v. United*

11  *Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975)); see also *Knox v. Davis,* 260 F.3d 1009, 1013 (9th

12  Cir. 2001) ("[A] mere continuing impact from past violations is not actionable.") (quotation and

13  quotation marks omitted).

14          Plaintiff cannot allege that Wong, Jackson, DeCosta, Torres, or any other defendant is

15  currently participating in the seizure or search of J.H.  The alleged acts of the police officers and

16  social workers that form the basis of Counts One, Six and Nine are discrete, not continual.  Even

17  though the allegedly unlawful seizure of J.H. has led, in part, to J.H.'s continued separation from

18  Plaintiff, this is an effect of the original alleged violation.  And, as stated above, the Court rejects

19  the argument that Plaintiff's claim continually accrues as long as J.H. is out of her custody.

20  Therefore, the continuing or ongoing violation doctrine does not apply to Count One.

21          Because Plaintiff's claims for violations of the Fourteenth Amendment based on the seizure

22  of J.H. accrued no later than January 2, 2007, these claims are time-barred, and their amendment

23  would be futile.  Therefore, they are DISMISSED with prejudice.

24                          2.   Counts Eight and Fifteen Fail to State a Claim

25          In Count Eight, Plaintiff alleges that the City of San Leandro, through the San Leandro City

26  Police Department, the Alameda County Department of Social Services, Alameda County, and

27  Richard Winnie seized and took J.H. into custody without probable cause and without a hearing in

28  violation of Plaintiff's Fourteenth Amendment right to be free from unwanted government

13

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1    intrusion into protected relationships.  Compl. ¶¶ 135-37.  Plaintiff also alleges that Alameda

2    County, through its Department of Social Services and County Counsel, caused J.H. to undergo an

3    intrusive medical exam without probable cause.  *Id.* ¶ 139.  These allegations mirror those made in

4    Counts One, Six and Nine, and are time-barred for the same reasons discussed regarding each of

5    those Counts, above.  Therefore, to the extent these Counts are based on the same facts alleged in

6    Counts One, Six and Nine, these Counts are DISMISSED with prejudice.

7         In addition to these allegations, Plaintiff alleges in Count Eight that Alameda County,

8    through its Department of Social Services and the Alameda County Counsel's office, conspired to

9    subject her to illegal and unconstitutional procedures in the Alameda County Superior Court.  *Id.* ¶

10   140.  These alleged illegal and unconstitutional procedures include the development of fabricated

11   claims of child [REDACTED] abuse, the constant coercion of J.H. to remember events of abuse as

12   Defendants believed them, the subornation and delivery of perjured testimony by State witnesses,

13   the creation of false and fraudulent documentation to support the State's case, and the intentional

14   refusal to investigate exculpatory evidence.  *Id.*  Likewise, in Plaintiff's Count Fifteen, she asserts

15   that all Defendants "agreed and conspired to manipulate J.H. . . . into the role of [REDACTED]

16   victim, and then neglecting to inform any present or subsequent judicial officer of the months and

17   months of such manipulation or of the exculpatory evidence that the minor had never been

18   [REDACTED] abused as alleged."  Compl. ¶ 204.  Plaintiff also alleges in Count Fifteen that

19   Defendants created false evidence of [REDACTED] abuse in their reports to the Superior Court,

20   and thereby violated her right to privacy under the First and Fourteenth Amendments.  While

21   Plaintiff appears to assert both federal constitutional violations as well as California law violations

22   in Count Fifteen, the state law aspect of Count Fifteen is addressed below in Section IV.C.

23        In their Motion to Dismiss Count Eight, the County Defendants argue that these claims are

24   time-barred because the dependency proceeding took place on April 5, 2007.  However, it is not

25   clear from the Complaint when Plaintiff learned of the allegedly falsified testimony or creation of

26   false documents.  No party addressed this question in the briefing on Defendants' motions.

27   However, based on the rule regarding accrual of fraud claims, it is not clear from the face of

28   Plaintiff's Complaint that these claims would have accrued at the hearing itself.  *Merck & Co. v.*

14

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   *Reynolds,* 130 S. Ct. 1784, 1793 (2010) ("where a plaintiff has been injured by fraud and remains

2   in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute

3   does not begin to run until the fraud is discovered" where "discovery" includes information the

4   plaintiff should have learned through the exercise of reasonable diligence.)  Therefore, the Court

5   cannot conclude based on the face of the Complaint that these claims are time-barred.

6         "To obtain relief on a procedural due process claim, the plaintiff must establish the

7   existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

8   interest by the government; and (3) lack of process.'"  *Shanks v. Dressel,* 540 F.3d 1082, 1090 (9th

9   Cir. 2008) (quoting *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993))

10  (brackets omitted).  "The Due Process Clause forbids the governmental deprivation of substantive

11  rights without constitutionally adequate procedure."  *Id.* at 1090-91 (citing *Cleveland Bd. of Educ.*

12  *v. Loudermill,* 470 U.S. 532, 541 (1985)).  In a context similar to the case at hand, the Ninth Circuit

13  held that "deliberately fabricating evidence in civil child abuse proceedings violates the Due

14  Process clause of the Fourteenth Amendment when a liberty or property interest is at stake."

15  *Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101, 1108 (9th Cir. 2009).  "To sustain a

16  deliberate fabrication of evidence claim," the Ninth Circuit has "held that a plaintiff must, 'at a

17  minimum, point to evidence that supports at least one of . . . two propositions.'"  *Costanich,* 627

18  F.3d at 1111 (quoting *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)).  Under

19  *Devereaux,* a plaintiff must show that "Defendants [either] continued their investigation of plaintiff

20  despite the fact that they knew or should have known that [she] was innocent" or "used

21  investigative techniques that were so coercive and abusive that they knew or should have known

22  that those techniques would yield false information."  *Costanich,* 627 F.3d at 1111 (quoting

23  *Devereaux,* 263 F.3d at 1076) (quotation marks and brackets omitted).

24        Plaintiff alleges that she possesses a Fourteenth Amendment right to be free from unwanted

25  government intrusion into her relationship with her son.  This is a constitutionally protected liberty

26  interest.  Plaintiff also alleges that Alameda County Superior Court deprived her of this protected

27  liberty interest based on fabricated and fraudulent evidence.  Plaintiff's allegations are conclusory,

28  stating (for example) that the unconstitutional procedures included "[t]he development of

15

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

fabricated claims of child [REDCATED] abuse," and "the subornation of perjured testimony by witnesses for the State."  The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  The Court finds that Plaintiff has not adequately alleged facts to support this claim.  As currently pled, the defendants have no way to know what information was allegedly falsified, what testimony was perjured, or what exculpatory evidence was withheld.  Though the "Factual Allegations" section of the complaint contains some facts that are presumably relevant to this claim (such as Plaintiff's allegation that the January 16, 2006 medical exam of J.H. produced exculpatory evidence which was never disclosed to the Superior Court), Plaintiff should specify the facts that this claim is based upon in the claim itself, so that the defendants implicated in Count Eight know what they are defending against.  "[A]llegations in a complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it."  *Starr v. Baca,* 633 F.3d 1191, 1204 (9th Cir. 2011).  Accordingly, Counts Eight and Fifteen are DISMISSED.  Plaintiff may amend these claims to more clearly indicate their factual basis, which Defendants are implicated, and how Plaintiff was injured.

        C.        Claims Subject to the California Torts Claims Act

        Defendants argue that Counts Seven, Twelve, Thirteen, Fourteen, Fifteen, Seventeen, and Twenty should be dismissed because Plaintiff failed to comply with California's Tort Claims Act.  "Under the California Tort Claims Act . . . , a plaintiff may not maintain an action for damages against a public entity or a public employee unless he timely files a notice of tort claim."  *Anderson v. County of San Diego*, No. 10-CV-00705-IEG, 2011 U.S. Dist. LEXIS 33379, at *19 (S.D. Cal. Mar. 29, 2011) (citations omitted).[9]  The purpose of the California Tort Claims Act[10] "is to provide

---

[9] Under California Government Code § 945.4, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  *State of California v. Superior Court*, 32 Cal. 4th 1234, 1239, 90 P.3d 116, 13 Cal. Rptr. 3d 534 (2004) (footnote omitted).  California Government Code § 950.2 requires that those who wish to sue a public employee based on acts or omissions within the scope of the employee's employment must first file a claim against that employee's public-entity employer.  *See Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612-13 (1991); *see also Dennis v. Thurman*, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997) ("When defendants are public employees, the plaintiff must first submit a written claim to the public entity that employs them before filing a lawsuit seeking monetary damages for violations

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1  the public entity sufficient information to enable it to adequately investigate claims and to settle

2  them, if appropriate, without the expense of litigation."  *Connelly v. County of Fresno*, 146 Cal.

3  App. 4th 29, 37-38, 52 Cal. Rptr. 3d 720 (2006) (quotation and quotation marks omitted).  "Timely

4  claim presentation is not merely a procedural requirement, but rather, a condition precedent to a

5  plaintiff's maintaining an action against a defendant, and thus, an element of the plaintiff's cause of

6  action."  *Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1211 (E.D. Cal. 2010) (citing *K.J. v.*

7  *Arcadia Unified School Dist.*, 172 Cal. App. 4th 1229, 1238, 92 Cal. Rptr. 3d 1 (2009)).  "Failure

8  to allege facts in a complaint demonstrating or excusing compliance with" the Tort Claims Act

9  "subjects the complaint to a motion to dismiss for failure to state a cause of action."  *Comm. for*

10  *Immigrant Rights v. County of Sonoma*, 644 F. Supp. 2d 1177, 1205 (N.D. Cal. 2009) (citation

11  omitted); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988)

12  (dismissing plaintiff's claims against public employees and entities for failure to allege compliance

13  with California tort claim procedures).  However, "[i]n general, state notice of claim statutes have

14  no applicability to § 1983 actions."  *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999).

15      Counts Seven, Twelve, Thirteen, Fourteen, Seventeen, and Twenty assert state law torts

16  claims rather than federal Constitutional rights.  Count Seven asserts malicious prosecution against

17  social workers Fuchs and Chew; Count Twelve asserts negligence against Alameda County, the

18  Department of Social Services, the City of San Leandro, the Alameda County Bar Association, and

19  the East Bay Children's Law Offices; Count Thirteen asserts negligence and gross negligence

20  against all Defendants; Count Fourteen asserts intentional infliction of emotional distress against

21  all Defendants; Count Seventeen asserts intentional interference with Plaintiff's right to counsel

22  under California law against all Defendants; and Count Twenty asserts attorney negligence and

23  misfeasance against the Alameda County Public Defender's Office, Alameda County Bar

24  Association, East Bay Children's Law Offices, and the individual appointed attorneys.

25

26  of California law." (citing CAL. GOV'T CODE §§ 945.4, 950.2)).  "Section 910 lists the information
    that must be included in a notice of claim."  *Connelly v. County of Fresno*, 146 Cal. App. 4th 29,

27  37, 52 Cal. Rptr. 3d 720 (2006) (footnote omitted).
    [10] The California Tort Claims Act is also called the Government Claims Act and the Government

28  Tort Claims Act.

17

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    It is unclear whether Count Fifteen, for invasion of privacy against all Defendants, asserts a

2    state law or federal cause of action.  Unlike Counts Seven, Thirteen, Fourteen, Seventeen, and

3    Twenty, Count Fifteen references federal law.  In particular, Plaintiff claims in Count Fifteen that

4    she has a right to privacy under the First and Fourteenth Amendments to the U.S. Constitution.

5    Compl. ¶ 202.  Count Fifteen alleges that J.H. was removed from Plaintiff's custody without

6    reasonable cause or exigent circumstances, that J.H. was manipulated to provide false evidence,

7    that defendants suppressed exculpatory evidence showing that J.H. was not abused, and that these

8    acts invaded Plaintiff's family relationships.  To the extent these allegations form the basis of a

9    Fourteenth Amendment claim via 42 U.S.C. § 1983, they are duplicative of Counts One and Eight,

10   discussed above.  However, Count Fifteen also asserts that Plaintiff's privacy rights have been

11   violated, and that defendants' acts were aimed at portraying Plaintiff in a false light.  To the extent

12   Count Fifteen is based on a violation of a California-law-based right to privacy, it asserts a state

13   law tort claim.  Therefore, Counts Seven, Twelve, Thirteen, Fourteen, Fifteen, Seventeen, and

14   Twenty, and the state-law-based portion of Count Fifteen are subject to the California Tort Claims

15   Act.

16        The Tort Claims Act applies only to public entities or their employees acting within the

17   scope of their employment.  Most of the defendants named in the Complaint are clearly public

18   entities or their employees: Alameda County, the City of San Leandro, the police officers and

19   social workers, County Counsel Winnie, Department of Social Services supervisors Jackson and

20   Baldovinos, and public school Principal Isaacson.  The Complaint alleges facts showing that all of

21   these individuals were acting in the scope of their employment during the alleged acts.  The

22   California Supreme Court has held that public defenders representing appointed clients are public

23   employees for purposes of the Tort Claims Act.  *Barner v. Leeds,* 24 Cal. 4th 676, 683 (2000).  In

24   light of the analogous roles performed by a public defender and appointed counsel in child

25   dependency proceedings, the Court tentatively finds that the appointed attorneys who represented

26   Plaintiff in the child dependency proceedings and their employers are also public employees and

27   entities for purposes of the Tort Claims Act.  Should Plaintiff amend her claims to re-assert state

28   law claims against her appointed counsel without alleging that she first presented her claims to the

18

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

relevant agencies, the parties shall address this question in later motions to dismiss.  The only Defendant that does not appear to be a public entity for purposes of the Act is EMQ Families First, which operates the facility where J.H. currently resides.  However, while some of Plaintiff's California law-based claims are asserted against all Defendants, it is not clear from the Complaint that any of these claims are actually asserted against EMQ Families First.   If Plaintiff amends the Complaint and re-asserts a state law cause of action specifically against EMQ Families First, the parties shall address this issue in any subsequent motion to dismiss.

In her Complaint, Plaintiff has not alleged that she complied with the claim presentation requirements of the California Tort Claims Act.  She does, however, argue that she should be excused from compliance.  In her Opposition, Plaintiff states that she could not have filed a complaint in compliance with the Tort Claims Act because her appointed counsel provided her incompetent advice and prevented her from filing complaints.  As the Supreme Court of California has stated, "a plaintiff may arguably be able to satisfy the claim presentation requirement by alleging an appropriate excuse, such as equitable estoppel."  *State of California v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1245, (Cal. Sup. Ct. 2004) (citing *Ard v. County of Contra Costa*, 93 Cal. App. 4th 339, 346-47 (Ct. App. 2001)).  In *Ard*, the court explained what may excuse a plaintiff from satisfying the claim presentation requirement: "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."  *Ard*, 93 Cal. App. 4th at 346-347 (quoting *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 445 (Cal. Sup. Ct. 1989)) (quotation marks omitted).

Plaintiff's argument that her appointed counsel prevented her from filing complaints does not excuse her from complying with the Tort Claims Act.  Under *Ard*, Plaintiff must allege that Defendants performed some affirmative act to prevent or deter her from filing her claim with the public entities that allegedly violated her constitutional rights.  She has failed to do so.  Plaintiff's allegations that her appointed counsel prevented her from filing complaints with the Superior Court do not excuse her failure to file complaints with the agencies that oversee the named Defendants. Because timely presentation of claims is a "condition precedent to a plaintiff's maintaining an

19

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1    action against a defendant," the Court must dismiss the Counts of Plaintiff's Complaint based on

2    state law.  Therefore, Counts Seven, Twelve, Thirteen, Fourteen, Seventeen and Twenty are

3    DISMISSED, and to the extent it is based on state law, Count FIFTEEN is DISMISSED as well.

4    Because Plaintiff could correct these deficiencies, the Court grants her leave to amend.  If Plaintiff

5    chooses to amend her claims, she must allege facts demonstrating or excusing her compliance with

6    the Tort Claims Act, at least as to all the defendants who are clearly public entities and

7    employees.[11]  As for the individual appointed attorneys, their employers, and EMQ Families First,

8    if Plaintiff re-asserts these claims against them and does not allege compliance with the Tort

9    Claims Act, the defendants shall address this issue in any second motions to dismiss.

10                       D.  Count Ten Fails to State a Claim

11           In Count Ten, Plaintiff attempts to state a claim for violation of her right to equal protection

12   of the law under the Fourteenth Amendment.  Plaintiff alleges that she was "subjected to malicious,

13   false and fraudulent 'prosecution' in a Juvenile Court, without criminal jurisdiction . . . to destroy

14   the familial relations of the Plaintiff and her son."  Compl. ¶ 155.

15           To state a § 1983 claim for violation of the Equal Protection Clause of the Fourteenth

16   Amendment, a plaintiff "must show that the defendants acted with an intent or purpose to

17   discriminate against the plaintiff based upon membership in a protected class," and that plaintiff

18   was treated differently from persons similarly situated.  *Barren v. Harrington*, 152 F.3d 1193, 1194

19   (9th Cir. 1998).  A plaintiff may state an equal protection claim by alleging four separate elements:

20   (1) that the municipal defendant treated plaintiff differently from others similarly situated; (2) this

---

21   [11] Plaintiff may also allege facts showing that she substantially complied with the claim
     presentment statutes.  "Where a claimant has attempted to comply with the claim requirements but

22   the claim is deficient in some way, the doctrine of substantial compliance may validate the claim
     'if it substantially complies with all of the statutory requirements even though it is technically

23   deficient in one or more particulars.'"  *Connelly v. County of Fresno*, 146 Cal. App. 4th 29, 38
     (2006) (quoting *Santee v. Santa Clara County Office of Education*, 220 Cal. App. 3d 702, 713

24   (1990)) (alterations omitted).  "The doctrine is based on the premise that substantial compliance
     fulfills the purpose of the claims statutes, namely, to give the public entity timely notice of the

25   nature of the claim so that it may investigate and settle those having merit without litigation."  *Id.*
     (quotation and quotation marks omitted).  "The doctrine of substantial compliance, however,

26   'cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to
     comply meaningfully with the statute.'"  *Id.* (quotation omitted).  "The test for substantial

27   compliance is whether the face of the filed claim discloses sufficient information to enable the
     public entity to make an adequate investigation of the claim's merits and settle it without the

28   expense of litigation."  *Id.*

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   unequal treatment was based on an impermissible classification; (3) the municipal defendant acted

2   with discriminatory intent in applying this classification; and (4) plaintiffs suffered injury as a

3   result of the discriminatory classification.  *See, e.g., Fobbs v. City of Union City,* No. C 09-2723

4   PJH, 2011 U.S. Dist. LEXIS 9187 at *14-18 (N.D. Cal. Jan. 31, 2011).  In her Opposition, Plaintiff

5   concedes that she inadvertently omitted facts relating to her equal protection claim from the

6   Complaint.  Although elsewhere in the Complaint Plaintiff alleges that she is a member of a Native

7   American Tribe, she does not allege that any defendant treated her differently from others similarly

8   situated based on any impermissible classification, that any defendant acted with discriminatory

9   intent in applying the classification, or that she suffered injuries resulting from such a

10  classification.  Although Plaintiff has made conclusory allegations of harmful treatment, her failure

11  to allege any *disparate* treatment is fatal to her claim as currently pled.  *Byrd v. Maricopa County*

12  *Sheriff's Dep't.,* 629 F.3d 1135, 1140 (9th Cir. 2011).  However, Plaintiff may be able to plead

13  facts sufficient to state an equal protection claim.  Accordingly, Count Ten is DISMISSED with

14  leave to amend.

15              E.  Count Eleven Fails to State a Claim

16          Plaintiff's Count Eleven attempts to state a claim for *Monell* liability against Alameda

17  County, the Alameda County Department of Social Services, the Alameda County Bar Association,

18  and the East Bay Children's Law Offices (the "Employer Defendants" for purposes of this Count),

19  based on the actions of their "Employee Defendants" (social workers Fuchs and Chew; Department

20  of Social Services supervisors Jackson and Baldovinos; police officers Jackson, DeCosta, Wong,

21  Torres; appointed counsel for Plaintiff Crowell, Smith, Reid, O'Rourke; appointed counsel for J.H.

22  Connor and Thomas).  Plaintiff alleges that the Employer Defendants "were all aware that they

23  failed to adequate[ly] train and supervise their employees to competently interview children about

24  whom allegations of [REDACTED] abuse had been made" and that "[i]n the case of appointed

25  attorneys for the indigent, to provide proper compensation and freedom of choice in defense

26  actions to the attorneys required to have the freedom to exercise independent judgment . . . ."

27  Compl. ¶ 165.  Plaintiff asserts that her appointed attorneys were paid under a fixed fee agreement

28  that she asserts violated Welfare and Institutions Code § 218 and limited the freedom of attorneys,

21

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   while assigning case loads "over and above any safe recommendations preventing the attorneys

2   from having the time to consult or competently represent their clients."  Compl. ¶ 170.

3          Plaintiff also alleges (without specifics) that the Employer Defendants "had all learned of

4   previous incidents involving the [Employee Defendants] . . . in which these Defendants allegedly

5   violated the statutory and Constitutional rights of other citizens" and that these allegations are

6   "likely to have additional evidentiary support after a reasonable opportunity for further

7   investigation and discovery."  Compl. ¶¶ 166-67.  Plaintiff alleges that the Employer Defendants

8   did not discipline their employees, but instead "tacitly authorized" their "improper conduct."

9   Compl. ¶ 169.  Plaintiff does not specify how she was injured by the practices asserted in Count

10  Eleven, although elsewhere in the Complaint she asserts § 1983 and other claims based on the

11  actions of the individual Employee Defendants.  For example, Counts One, Two and Three assert

12  claims based on actions of the police officers; Count Seven asserts a claim based on the actions of

13  the social worker defendants; and Count Seventeen asserts a claim based on the actions of

14  appointed counsel for Plaintiff.

15         "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory,

16  or injunctive relief where . . . the action that is alleged to be unconstitutional implements or

17  executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated

18  by that body's officers."  *Monell v. Department of Social Services of City of New York*, 436 U.S.

19  658, 690, 98 S.Ct. 2018 (1978).  A local government may not be sued under a theory of respondeat

20  superior for injuries inflicted solely by its employees or agents.  *Monell*, 436 U.S. at 691; *Anderson*

21  *v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  Rather, a plaintiff must demonstrate that the

22  government's official policy or custom was the "moving force" responsible for infliction of her

23  injuries.  *Monell*, 436 U.S. at 694.  Under *Monell*, a plaintiff may establish municipal liability by

24  demonstrating that "(1) the constitutional tort was the result of a longstanding practice or custom

25  which constitutes the standard operating procedure of the local government entity; (2) the

26  tortfeasor was an official whose acts fairly represent official policy such that the challenged action

27  constituted official policy; or (3) an official with final policy-making authority delegated that

28

22

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

In "limited circumstances," the failure to train municipal employees can serve as the policy underlying a *Monell* claim. *Bd. of the Cnty. Comm'rs v. Brown,* 117 S. Ct. 1382, 1390 (U.S. 1997). "If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*

Plaintiff has failed to adequately state a claim for *Monell* liability for any of the defendants named in this Count. First, regarding the East Bay Children's Law Offices and defendants Thomas and Connor, because these defendants provided representation for J.H. and not for Plaintiff, a claim against these defendants is J.H.'s claim to bring. For the reasons discussed in section IV.A., above, Plaintiff cannot bring these claims on J.H.'s behalf. Regarding the claims asserted on her own behalf, Plaintiff has not adequately alleged what her constitutional injury or injuries were. Plaintiff has also failed to tie those injuries to "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity" or to plead that the failure to train employees resulted in specific constitutional violations and a resulting deliberate indifference to those constitutional violations. Finally, while Plaintiff alleges that appointed counsel were systematically underpaid and overworked, she does not assert any injury flowing from this asserted policy. Accordingly, Count Eleven is DISMISSED without prejudice, except that Plaintiff may not reassert claims on behalf of J.H.

### F.   Count Sixteen Is Dismissed for Failure to State a Claim

#### 1.   ICWA as § 1983 Predicate

Plaintiff's Count Sixteen is a § 1983 claim based on her allegation that her ICWA right to competent counsel in the Superior Court dependency proceedings was violated. Plaintiff alleges that the defendants "conspired and agreed that appointed attorneys would not as a custom and practice produce any written pleadings for the defense of their clients, nor would they be paid for

23

United States District Court
For the Northern District of California

1    their time to consult with their appointed clients."  Compl. ¶ 212.  Plaintiff alleges that appointed

2    counsel appeared in court but provided no "substantive actual effort, no investigation of the facts or

3    the law nor vigorous defense or responsive pleadings" on behalf of appointed clients.  Compl. ¶

4    214.  Plaintiff is asserting a direct claim for violation of ICWA (on the basis of ineffective

5    assistance of counsel and on a number of other bases as well) in the related action, *J.H. v.*

6    *Baldovinos*, pending before this Court.  In Count Sixteen's § 1983 claim, Plaintiff seeks to hold

7    defendants liable for money damages and attorney's fees based on this alleged violation.  These

8    remedies are not available to Plaintiff in her direct ICWA claim.

9        County Defendants argue that Plaintiff cannot bring an ICWA claim via § 1983 because the

10    "express" remedies available under ICWA indicate that Congress did not intend that the ICWA

11    right could be enforced via § 1983.  In a different context, the Ninth Circuit has previously found

12    that a claim based on an implied right under ICWA may be asserted via § 1983.  "There are two

13    issues necessary to determining whether . . . ICWA claims are enforceable by § 1983: 1) whether

14    the federal statute was intended to create an enforceable right; and 2) whether the statutory scheme

15    indicates an intent to preclude resort to § 1983.  *Native Village of Venetie IRA Council v. State of*

16    *Alaska,* 155 F.3d 1150, 1152 (9th Cir. 1998).  ICWA clearly creates enforceable rights, including

17    judicial review of dependency proceedings.  *Id.*  Therefore, the "only remaining question is

18    whether the ICWA include[s] a sufficiently exhaustive remedial scheme within the underlying

19    statute to preclude enforcement under § 1983."  *Id.*

20        In *Native Village*, the Ninth Circuit found that ICWA's remedial scheme was not

21    sufficiently exhaustive to preclude enforcement of ICWA's § 1911(d) under § 1983.  In that case,

22    the plaintiffs (the Village and certain individuals) sued the State of Alaska for recognition of Indian

23    adoption decisions made by the tribal court, pursuant to ICWA's full faith and credit clause (25

24    U.S.C. § 1911(d)).  Although ICWA creates a right to invalidate state court adoption decrees for

25    violations of ICWA §§ 1911, 1912 or 1913, *Native Village* did not involve an attempted

26    invalidation of state court adoption decrees.  Therefore, the Ninth Circuit "had to imply a federal

27    cause of action precisely because none was explicitly included in the statutory scheme."  *Native*

28    *Village*, 155 F.3d at 1153.  Because the cause of action had to be implied, the Ninth Circuit

24

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   concluded that "[i]t would seem strange indeed for a statute to include a remedial scheme

2   sufficiently comprehensive to preclude a § 1983 suit where an enforceable federal right had to be

3   implied by the court.  The ICWA, therefore, does not provide any exclusive means for enforcing

4   the rights recognized in § 1911(d)."  *Id.*

5          In contrast to the § 1911(d) claim brought in *Native Village*, in the present case Plaintiff's

6   claims are based on the ICWA § 1912 right to appointed counsel.  Through 25 U.S.C. § 1914,

7   Congress "explicitly authorized federal courts to invalidate state court judgments" for violations of

8   ICWA § 1912.  *Doe v. Mann*, 415 F.3d 1038, 1047 (9th Cir. 2005).  Therefore, Plaintiff's claim

9   meets the first requirement of "a federal statute . . .  intended to create an enforceable right."

10  Regarding Congressional intent to preclude § 1983 actions, the Supreme Court has held that "[t]he

11  provision of an express, private means of redress in the statute itself is ordinarily an indication that

12  Congress did not intend to leave open a more expansive remedy under § 1983."  *City of Rancho*

13  *Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005).  In particular, "the existence of a more

14  restrictive private remedy for statutory violations has been the dividing line between those cases in

15  which we have held that an action would lie under § 1983 and those in which we have held that it

16  would not."  *Id.*  For example, in *Rancho Palos Verdes*, the plaintiff could not bring a claim under

17  the Telecommunications Act of 1996 (TCA) as the basis for a § 1983 claim, because the TCA

18  provided for more limited relief than § 1983.  *Rancho Palos Verdes*, 544 U.S. at 121-23.  Under the

19  TCA, claims had to be brought within 30 days of the government's final action, and decided on an

20  expedited basis.  *Id.*  It was not clear if the TCA authorized recovery of damages, but unlike § 1983

21  (via 42 U.S.C. § 1988), it did not provide for attorney's fees.  *Rancho Palos Verdes*, 544 U.S. at

22  121-24.  *Id.*  The Court concluded that permitting a § 1983 claim based on a TCA claim would

23  "distort the scheme of expedited judicial review and limited remedies."  *Id.*, 544 U.S. at 127.  In its

24  holding, the Court rejected the government's argument that *any* statute expressly providing a

25  private right of action precludes § 1983 relief, holding that the "ordinary inference that the remedy

26  provided in the statute is exclusive can surely be overcome by textual indication, express or

27  implicit, that the remedy is to complement, rather than supplant, § 1983."  544 U.S. at 122.

28

25

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1    The County argues that because ICWA expressly provides an enforceable right, and

2    because it does not authorize an award of damages or attorney's fees, the Court should find that

3    Congress did not intend to allow ICWA claims to serve as the basis for § 1983 claims.

4    "[L]imitations upon the remedy contained in the statute are deliberate and are not to be evaded

5    through § 1983." *Rancho Palos Verdes*, 544 U.S. at 121-124.  Although this is a close question,

6    the Court finds that the fact that ICWA does not provide for damages or attorney's fees does not

7    preclude § 1983 claims based on ICWA claims.  Unlike the "statutory schemes" analyzed by the

8    Supreme Court in cases finding preclusion of § 1983 claims, ICWA does not contain extensive

9    procedural limitations.  *See, e.g., Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*

10   453 U.S. 1, 14 (1981) (finding that the "elaborate enforcement provisions" of several laws,

11   including authorization under the Federal Water Pollution Control Act of citizen suits for certain

12   injunctive relief, requiring 60 days' advance notice to defendants, indicated that Congress did not

13   intend to allow enforcement of the Act through § 1983).  Instead, ICWA simply authorizes Indian

14   children, their parents, custodians, and tribes to challenge state dependency court decisions in "any

15   court of competent jurisdiction." 25 U.S.C. § 1914.  There are no "elaborate" or restrictive

16   administrative requirements, such as brief periods to file for review.  Moreover, when interpreting

17   laws pertaining to Indians, "[s]tatutes are to be construed liberally in favor of the Indians;

18   ambiguous provisions are to be interpreted to the Indians' benefit."  *Venetie I.R.A. Council v.*

19   *Alaska,* 944 F.2d 548, 553 (9th Cir. 1991).  Construing ICWA liberally and in favor of Indians, the

20   Court finds that ICWA's failure to provide for attorney's fees or damages does not indicate clear

21   Congressional intent to preclude plaintiffs from seeking these remedies via § 1983.

22        County Defendants argue that "the Ninth Circuit has found that Section 1983 is not means

23   to avoid the remedial limitations of federal statutes."  County Defendants' MTD at 9.  They cite

24   *Blanchard v. Morton Sch. Dist.,* 509 F.3d 934, 937-38 (9th Cir. 2007).  In this case, the Ninth

25   Circuit found that a parent could not bring a § 1983 claim based on the Individuals with

26   Disabilities Education Act (IDEA).  *Id.* The fact that IDEA contained a "comprehensive

27   enforcement scheme demonstrated congressional intent to preclude § 1983 claims."  *Id.*  In this

28   decision, the Ninth Circuit cited the "thoughtful, well-reasoned opinion of the Third Circuit" on the

26

same issue, citing *A.W. v. Jersey City Pub. Sch.,* 486 F.3d 791, 802 (3d Cir. 2007).  In *A.W.*, the Third Circuit noted that IDEA's enforcement scheme provides aggrieved parties the right to submit a complaint to either the state educational agency, or an impartial due process hearing.  *Id.*  Any party unhappy with the outcome of the hearing has 90 days to file a complaint in district court, which may then grant injunctive relief and attorney's fees.  *Id.*  Unlike ICWA, but like the laws at issue in *Rancho Palos Verdes* and *Sea Clammers*, IDEA's enforcement scheme contains specific procedural limitations.  In light of the absence of such limitations from ICWA's enforcement provisions, and particularly in light of presumptions applying to Indian law, the Court finds that *Blanchard* is distinguishable.   Accordingly, the Court rejects County Defendants' argument regarding dismissal of Count Sixteen.

### 2.   Timeliness of Count Sixteen

County Defendants argue, as they do for all of Plaintiff's § 1983 claims, that Count Sixteen is time-barred.  Plaintiff appears to base at least a portion of this claim on events that occurred more than two years before she filed the Complaint.  For example, Plaintiff asserts that she has been deprived of competent counsel since December 22, 2006, when the first attorney was appointed to represent her in the child dependency proceedings.  Compl. ¶ 212.  Thus, it seems that at least a portion of Plaintiff's allegations under this Count may be time-barred.  However, this Count contains few specifics and it is therefore impossible to tell what portions of the claim are dismissible due to being untimely.  Therefore, the Court will not dismiss the claim on this ground.

### 3.   Failure to State a Claim

Finally, the County Defendants argue that Count Sixteen fails to state a claim for conspiracy.  In order to state such a claim, Plaintiff must plead 1) the existence of an express or implied agreement among the defendants to deprive Plaintiff of her constitutional rights; and 2) an actual deprivation of those rights resulting from that agreement.  *Ting v. U.S.,* 927 F.2d 1504, 1512 (9th Cir. 1991).  While Plaintiff generally alleges a "conspiracy to put on a show of attorney representation while actually doing nothing," she does not specify who the parties to this alleged conspiracy were or are.  Nor does Plaintiff specify how the agreement resulted in a deprivation of her rights.   A "formulaic recitation of the elements of a constitutional discrimination claim" does

27

1    not suffice to state a claim.  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1951 (U.S. 2009).  In this case,

2    Plaintiff has not alleged (even conclusorily) all of the elements of the asserted claim.  Accordingly,

3    the Court DISMISSES this claim with leave to amend.  In any amended complaint, Plaintiff should

4    clarify and add specificity to this claim, to indicate what parties this Count is directed to, what

5    those parties conspired or agreed to do, and what constitutional deprivations resulted.

6              G.  Count Eighteen Is Dismissed for Failure to State a Claim

7              Plaintiff brings Count Eighteen against Richard Winnie, the former County Counsel for

8    Alameda County.  Plaintiff alleges that Winnie had policies in place that directly caused

9    unconstitutional conduct by "assistant County Counsels."  Compl. ¶ 227.  Plaintiff asserts that

10   Winnie failed to train his subordinates to provide exculpatory evidence to "the opposition"

11   pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963)[12].  Plaintiff asserts that Winnie was aware that

12   the lack of training would lead to improper conduct, including "allegations of . . . child

13   [REDACTED] abuse [based on] inadmissible hearsay," and that he "acted with deliberate

14   indifference" to the rights of families involved in child custody determinations.  Plaintiff seeks

15   declaratory relief "to prevent the abuse of Plaintiffs' well known rights."  Compl. ¶ 233.

16              The Ninth Circuit has held that

17        A defendant may be held liable as a supervisor under § 1983 if there exists either
          (1) his or her personal involvement in the constitutional deprivation, or (2) a
18        sufficient causal connection between the supervisor's wrongful conduct and the
          constitutional violation.  A plaintiff must show the supervisor breached a duty to
19        plaintiff which was the proximate cause of the injury.  The law clearly allows
          actions against supervisors under section 1983 as long as a sufficient causal
20        connection is present and the plaintiff was deprived under color of law of a
          federally secured right.

21

22        *Starr v. Baca,* 633 F.3d 1191, 1196-97 (9th Cir. 2011) (alterations and internal citations

23   omitted).

24              As with many of Plaintiff's claims, it is difficult to make out exactly what this claim

25   attempts to address.  Plaintiff does not specifically discuss this Count in her Opposition to the

26   County Defendants' Motion to Dismiss.  From Count Eighteen itself, it is not possible to tell how

27   _____

     [12] It is not well-established that the *Brady* rule applies to child dependency proceedings.  *See Clarke*
28   *v. Upton,* No. CV-F-07-888 OWW/SMS, 2009 U.S. Dist. LEXIS 44045 at *52 (E.D. Cal. May 26,
     2009).

     Case No.: 10-CV-05797-LHK
     ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Winnie's policies caused Plaintiff's alleged injuries.  The alleged injuries appear to have been

2    caused by social workers who withheld exculpatory evidence and made false statements in

3    connection with the child dependency proceedings.  The Complaint fails to tie any policies enacted

4    by Winnie (alleged to be County Counsel at the time) to the actions of the social workers.  In fact,

5    Plaintiff's allegations against her attorneys suggest that they could not have withheld any

6    exculpatory evidence, because they failed to discover it.  For example, Plaintiff asserts that

7    attorney Crowell "never . . . sought review of the medical records, nor did she consult with a

8    medical expert."  Since the only exculpatory evidence Plaintiff has identified is the medical exam

9    of J.H. performed at Children's Hospital, it is not clear how her attorney could have withheld this

10   evidence if Plaintiff also contends that she was not aware of it.  And it is even less clear how any

11   policy set forth by Winnie as County Counsel could have resulted in such a withholding.

12        Plaintiff's Count Eighteen is simply too vague to state a claim.  "[A]llegations in a

13   complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of

14   the nature of the claim so that the party may effectively defend against it."  *Starr v. Baca,* 633 F.3d

15   1191, 1204 (9th Cir. 2011).  Plaintiff's incorporation of all the preceding paragraphs in the

16   Complaint is not sufficient to put Defendants on notice of the basis for this claim.  Plaintiff must

17   allege facts showing a "causal connection" between Winnie's wrongful conduct and the asserted

18   injury.  Plaintiff must also clearly identify what the injury was, and which specific individuals

19   caused it.  Accordingly, Count Eighteen is DISMISSED with leave to amend.

20             H.    Count Nineteen Is Dismissed For Failure to Allege State Actors

21        Count Nineteen of Plaintiff's Complaint is titled "Attorney Malpractice" and "Civil Rights

22   Violations."  As the title suggests, the claim appears to be a hybrid of attorney malpractice based

23   on state law and a § 1983 claim based on the same underlying allegations.  In this Count, Plaintiff

24   names her appointed attorneys (Crowell, Smith, Reid, and O'Rourke) as well as appointed counsel

25   for J.H. (Connor and Thomas).  For the reasons set forth in Section IV.A., Plaintiff cannot bring

26   claims against J.H.'s attorneys on J.H.'s behalf.  Because Plaintiff herself had no attorney-client

27   relationship with Connor or Thomas, Plaintiff cannot proceed with a claim against these two

28

29

**United States District Court**
For the Northern District of California

1    defendants.  Thus, the claim against Connor and Thomas is DISMISSED with prejudice as to

2    Plaintiff and without prejudice as to J.H.

3           Regarding her own appointed counsel, to the extent Count Nineteen is based on attorney

4    malpractice in violation of California law, the Court has tentatively found that this claim is subject

5    to the California Tort Claims Act claim presentation requirement.  Accordingly, as set forth in the

6    analysis in Section IV.C., the state law portion of the claim is DISMISSED on this basis with leave

7    to amend.

8           In addition, attorney Crowell argues that Plaintiff's claims are time-barred as to her.

9    Plaintiff alleges that Crowell's representation of her ended as of January 14, 2008, after Plaintiff

10   expressed her dissatisfaction with Crowell to the Superior Court through a "verbal *Marsden*

11   motion" on December 13, 2007.  Compl. ¶ 57.  Because Plaintiff complained to the Superior Court

12   about Crowell on December 13, 2007, and the Superior Court interpreted this as a request to

13   replace Crowell as Plaintiff's appointed counsel, it appears that as of this date Plaintiff was aware

14   of the facts constituting her malpractice claim against Crowell.  California provides a one-year

15   statute of limitations for attorney malpractice claims.  Cal. Code Civ. Proc. § 340.6.  Accordingly,

16   Crowell argues that Plaintiff's claim against her accrued at least by January 14, 2008, when another

17   attorney was appointed to represent Plaintiff, and that the claim is now time-barred.  In her

18   Opposition, Plaintiff responds that she believes her claim should be tolled.  Section 340.6 states

19   that:

20          In no event shall the time for commencement of legal action exceed four years
            except that the period shall be tolled during the time that any of the following exist:
21          (1) The plaintiff has not sustained actual injury.
            (2) The attorney continues to represent the plaintiff regarding the specific subject
22          matter in which the alleged wrongful act or omission occurred.
            (3) The attorney willfully conceals the facts constituting the wrongful act or
23          omission when such facts are known to the attorney, except that this subdivision
            shall toll only the four-year limitation.
24          (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's
            ability to commence legal action.

25          In opposing Crowell's motion to dismiss, Plaintiff argues that the second, third and fourth

26   exceptions apply to her.  Plaintiff does not identify any specific reasons why these exceptions

27   should apply, however.  Nor does Plaintiff argue that her claim did not accrue when she

28

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   complained about Crowell's performance to the Superior Court.  Although, based on the facts

2   alleged in the Complaint, it appears that the claim against Crowell is time-barred, the Court will

3   give Plaintiff leave to amend to state the reasons supporting tolling of this claim.

4          To the extent Count Nineteen asserts a § 1983 claim against the appointed attorneys, the

5   law is clear that such attorneys do not act under color of state law.  *Miranda v. Clark Cnty.,* 319

6   F.3d 465, 469 (9th Cir. 2003).  In *Miranda*, the Ninth Circuit considered § 1983 claims brought

7   against an appointed public defender.  Even though he was "paid by government funds and hired

8   by a government agency . . . his function was to represent his client, not the interests of the state or

9   county." *Id*.  Because he was performing the traditional function of a lawyer, he was not a state

10  actor. *Id*.  Plaintiff alleges that her appointed counsel were performing the traditional functions of

11  lawyers while representing her (though she was unhappy with their performance).  In fact, Count

12  Nineteen is based on Plaintiff's allegations that her attorneys failed to "file any action" or "obtain

13  exculpatory evidence" while representing her.   Accordingly, Plaintiff cannot state a § 1983 claim

14  against the individual appointed attorneys named in Count Nineteen because, as a matter of law,

15  they were not state actors while serving as her appointed counsel.  Plaintiff argues that "by

16  participating in contracts under the DRAFT program," the appointed counsel acted under color of

17  state law.  The Ninth Circuit's finding that even a full-time public defender "paid by government

18  funds" is not a state actor rebuts Plaintiff's argument.  Thus, the portion of Count Nineteen based

19  on § 1983 is DISMISSED without leave to amend.  The remainder of Count Nineteen is

20  DISMISSED with leave to amend to plead compliance with the Tort Claims Act (if possible) and

21  to plead facts supporting tolling of Plaintiff's malpractice claim against attorney Crowell.  If

22  Plaintiff renews her claims against her appointed counsel and does not allege compliance with the

23  Tort Claims Act, the relevant defendants shall address whether or not they are public employees for

24  purposes of the Tort Claims Act in any motion to dismiss.

25          I.   Social Workers May Be Entitled to Qualified Immunity for False Statements

26          In addition to the arguments addressed above, the County Defendants argue that the

27  individual social workers named as defendants (Chew, Fuchs, Fernandez, and Jackson) are entitled

28  to absolute immunity for most of their actions as alleged in the Complaint (such as failing to

31

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   disclose exculpatory evidence and manipulating J.H. to "remember" events that did not really

2   occur). County Defs.' Mot. at 12-16. Regarding the alleged falsification of information, County

3   Defendants argue that the social workers are entitled to qualified immunity. County Defs.' Mot. at

4   17-18. In support of their absolute immunity argument, County Defendants rely on older Ninth

5   Circuit authority holding that a social worker is "entitled to absolute immunity because her actions

6   involved the initiation and pursuit of child dependency proceedings." *Doe v. Lebbos,* 348 F.3d

7   820, 825 (9th Cir. 2003). County Defendants argue that although the Ninth Circuit has since

8   limited social workers' immunity, the "quasi-prosecutorial" absolute immunity still applies when

9   social workers initiate child dependency proceedings. *See Beltran v. Santa Clara Cnty.*, 514 F.3d

10  906, 908 (9th Cir. 2008) (overruling *Doe* and finding that a social worker was not immunized for

11  "fabricat[ing] evidence during a preliminary investigation, before he could properly claim to be

12  acting as an advocate, or mak[ing] false statements in a sworn affidavit.") (citations and alterations

13  omitted).

14      It is true that "social workers, like prosecutors, are entitled to absolute immunity for

15  instituting child removal proceedings." *Costanich v. Dept. of Social and Health Servs.*, 627 F.3d

16  1101, 1115 (9th Cir. 2010). However, the County Defendants interpret "instituting child removal

17  proceedings" too broadly. The County Defendants argue they are immunized for alleged acts of

18  "encouraging false testimony" and "ignoring evidence and statements which tended to show

19  Plaintiff did not commit the acts alleged," and that only false, sworn statements could subject them

20  to lesser or no immunity. *See* County Defs.' Mot. at 14.

21      In *Costanich*, the Ninth Circuit held that a social worker is not entitled to immunity when

22  he fabricates evidence during a child abuse investigation, *or* submits false statements in a sworn

23  declaration seeking to remove a child from parental custody. *Costanich*, 627 F.3d at 1109.

24  Therefore, the County Defendants' argument that only sworn statements are outside the immunity

25  is incorrect. In *Costanich*, the defendant social worker allegedly falsified evidence while

26  investigating possible child abuse. *Costanich,* 627 F.3d at 1113. These statements were "not

27  questions of tone or characterization but actual misrepresentations." *Id*. For example, the social

28  worker allegedly attributed statements to certain witnesses who denied making the statements, and

32

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   stated that she had interviewed the children's doctors when she had not actually done so.  *Id.*, 627

2   F.3d at 1112.  The Ninth Circuit held that the social worker was not entitled to absolute immunity

3   for such acts.  However, when a right is not "clearly established" at the time of an alleged

4   violation, state actors enjoy qualified immunity if they violate the right (even if the right is later

5   clearly established).  *Id.* at 1114.  Because the right not to be accused based on fabricated evidence

6   in a child dependency proceeding was not clearly established at the time the *Costanich*

7   investigation was made (2001), the social worker was entitled to qualified immunity.  *Id.*, 627 F.3d

8   at 1116.

9          Based on the *Costanich* case, and the facts currently alleged, it is likely that the social

10   worker defendants are entitled to qualified immunity.  Plaintiff alleges that the social workers

11   "manipulated" J.H. while interviewing him, withheld exculpatory evidence, and falsified evidence.

12   While defendant social workers would not be immunized for committing these acts today, they

13   were likely entitled to qualified immunity for committing them during 2006 and 2007, when the

14   underlying events took place.  However, the Court finds that it would be premature to dismiss all §

15   1983 claims against the social workers based on qualified immunity.  Plaintiff's allegations,

16   especially regarding the "falsified" evidence and perjured testimony, are very vague, and the Court

17   has given Plaintiff leave to amend her claims to more clearly specify the facts upon which she is

18   relying, against which defendant(s) each claim is asserted, and how the Plaintiff was injured in

19   each case.  Since it is very unclear exactly what claims are directed against the social workers by

20   the current Complaint, the Court reserves judgment on this question.  Plaintiff may amend her

21   Complaint as set forth in this Order.  If she re-asserts § 1983 claims against individual social

22   workers based on the investigation leading up to J.H.'s removal, the County Defendants may raise

23   the question of qualified immunity in a second motion to dismiss.

24                  J.   The *Rooker-Feldman* Doctrine Does Not Apply

25          Finally, the Court addresses County Defendants' argument that all of Plaintiffs' § 1983

26   claims are barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine holds that

27   federal courts do not have subject matter jurisdiction to review the judgments or final

28   determinations of state courts, even if the state court decision might involve federal constitutional

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

1   issues.  *See Ignacio v. Judges of the United States Court of Appeals for the Ninth Circuit*, 453 F.3d

2   1160, 1165 (9th Cir. 2006).  In the Ninth Circuit, the *Rooker-Feldman* doctrine "applies only when

3   the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her

4   remedy relief from the state court judgment."  *See Kougasian v. Kougasian*, 359 F.3d 1136, 1140

5   (9th Cir. 2004).

6          In their motion to dismiss Plaintiff's complaint, County Defendants argue that "Plaintiffs

7   attempt to disrupt or 'undo' the state court judgment," and that "Plaintiffs' claims are clearly and

8   inextricably entwined with the prior . . . decision."  County Defs.' Mot.  (Dkt. No. 66) at 11.  In

9   support of their assertion that this is a forbidden de facto appeal, County Defendants cite the Ninth

10  Circuit's 2003 statement that "federal claims [which] would undercut the state ruling" are barred

11  under *Rooker-Feldman*.  County Defs.' Mot. at 10. (citing *Bianchi v. Rylaarsdam* 334 F.3d 895,

12  898 (9th Cir. 2003).

13         However, both the Ninth Circuit and the Supreme Court have clarified the *Rooker-Feldman*

14  doctrine since *Bianchi*.  The Ninth Circuit has since stated that "where the federal plaintiff does not

15  complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by

16  an adverse party, *Rooker-Feldman* does not bar jurisdiction."  *Noel v. Hall*, 341 F.3d 1148, 1163

17  (9th Cir. 2003).  This results from the exclusive grant of jurisdiction over appeals from final state

18  court judgments to the United States Supreme Court.  *Id.,* 341 F.3d at 1154-55.  The Supreme

19  Court approvingly cited *Noel* in its opinion examining *Rooker-Feldman*, and held that the doctrine

20  is confined to "cases brought by state-court losers complaining of injuries *caused by state-court*

21  *judgments*." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005) (emphasis

22  added).  Because Plaintiff complains of legal injuries caused by the Defendants' actions, rather

23  than by the Superior Court's judgment, her claims are not barred by the *Rooker-Feldman* doctrine.

24  As Plaintiff neither seeks relief from the state court's judgment, nor alleges error on the part of the

25  state court, she is not "a 'state-court loser' looking to the federal court to second-guess a previously

26  rendered state-court judgment on the merits."  County Defs.' Reply Br. at 12.

27         This case is distinguishable from *Bianchi*, in which the plaintiff sought "an injunction

28  vacating a decision by the California Court of Appeal."  *Bianchi*, 334 F.3d at 896.  The Ninth

34

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1    Circuit denied Bianchi's request, as he "essentially asked the federal court to review the [state

2    court's judgment] and to afford him the same individual remedy he was denied in state court." *Id.*

3    at 898 (citation and quotation marks omitted).  Here, Plaintiff seeks monetary damages, not

4    injunctive relief.

5         This case is likewise distinguishable from *Doe v. Mann,* also cited by County Defendants.

6    Defendants assert that "Plaintiff's claims are clearly and inextricably intertwined with the prior . . .

7    decision."  Defs.' Mot. at 11.  Defendants cite *Doe v. Mann*, a Ninth Circuit dismissal of a

8    challenge to a state court judgment to terminate parental rights.  *Id.*  (citing *Doe v. Mann*, 415 F.3d

9    at 1041).  The plaintiff in *Doe* sought "a declaration that the state court judgments . . . were null

10   and void."  *Doe*, 415 F.3d at 1041.  Doe argued that the state court had no jurisdiction to issue the

11   judgment.  Thus, she asked the Ninth Circuit to "'undo' a prior state court judgment."  *Doe*, 415

12   F.3d at 1042.  In contrast, Plaintiff does not ask the Court to vacate the custody determination

13   issued by the Superior Court.  Thus, *Doe* is not controlling.

14        In *Noel*, the Ninth Circuit specified that "[o]nly when there is already a forbidden de facto

15   appeal in federal court does the 'inextricably intertwined' test come into play."  *Noel*, 341 F.3d at

16   1158.  That is, for a claim to be barred because it is inextricably intertwined with a forbidden de

17   facto appeal, that appeal must be brought to the court as well.  The Ninth Circuit later clarified that

18   "[t]he inextricably intertwined test . . . allows courts to dismiss claims closely related to claims that

19   are themselves barred under *Rooker-Feldman*."  *Kougasian*, 359 F.3d at 1142.  Though the plaintiff

20   in *Kougasian* requested that the court set aside a judgment, this request was based on the

21   defendant's commission of extrinsic fraud, not because of legal error on the part of the state court.

22   *Id.* at 1143.  Although the plaintiff resuscitated several claims previously adjudicated by the state

23   court in her federal complaint, she did not allege legal error.  Therefore, the Ninth Circuit found

24   that the plaintiff did not seek a de facto appeal.  *Id.* at 1142.  Because an "inextricably intertwined"

25   claim can only be dismissed when brought in conjunction with a de facto appeal, none of

26   Kougasian's claims were barred under *Rooker-Feldman* (though the court noted that preclusion

27   might apply).  *Id.* at 1143.

28

35

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    Here, as in *Kougasian,* Plaintiff is not alleging legal error on the part of the state court, and

2    therefore is not making a de facto appeal.  Because there is no de facto appeal, Plaintiff's claims

3    cannot, as County Defendants assert, be "clearly and inextricably intertwined" with a forbidden

4    appeal.  Accordingly, County Defendants' motion to dismiss Plaintiff's § 1983 claims under the

5    *Rooker-Feldman* doctrine is DENIED.

6    V.    CONCLUSION

7    For the reasons stated above, Plaintiff's Complaint is DISMISSED with leave to amend as

8    specified.  To summarize, Counts Three, Four and Five, and the portions of any other Counts

9    brought exclusively on behalf of J.H. are DISMISSED without prejudice as to J.H. and with

10   prejudice as to Plaintiff.  Counts One, Two, Six, and Nine of the Complaint are DISMISSED with

11   prejudice because they are time-barred.  Counts Seven, Eight, Ten, Eleven, Twelve, Thirteen,

12   Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen and Twenty are DISMISSED with leave

13   to amend as specified in this Order.  Plaintiff shall submit any amended complaint within **30 days**

14   **of the date of this Order**.

15   **IT IS SO ORDERED.**

16   Dated: July 8, 2011

17   LUCY H. KOH
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28

36

Case No.: 10-CV-05797-LHK
ORDER ON MOTIONS TO DISMISS