UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BELINDA K., | ) Case No.: 10-CV-05797-LHK |
| | ) |
| Plaintiff, | ) |
| | ) ORDER GRANTING MOTIONS TO |
| v. | ) DISMISS |
| | ) |
| COUNTY OF ALAMEDA et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## I.       INTRODUCTION

On December 21, 2010, Belinda K. (Plaintiff), proceeding pro se, filed a complaint alleging

20 causes of action against 23 named defendants on behalf of herself and her minor son, J.H. *See*

Compl. (Dkt. No. 1).  Plaintiff's Complaint alleges that her minor son was taken from her custody

on the basis of falsified, misleading and incomplete information indicating that he had been abused

by Plaintiff's boyfriend.  Based on these allegations, Plaintiff asserts constitutional violations and

violations of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq. via 42 U.S.C. §

1983, as well as a number of claims arising under state law such as malicious prosecution,

intentional infliction of emotional distress, invasion of privacy, and attorney malpractice.  At the

same time Plaintiff filed the Complaint in this case, she filed an identical complaint in the Superior

Court for the County of Alameda. The second complaint was removed to this Court by some of the

defendants, and subsequently related to and consolidated with the above-captioned case. *See* Dkt.

No. 86.  Seven different groups of defendants (collectively, "Defendants") filed motions to dismiss

1

the original complaint.  The Court granted Defendants' Motions to Dismiss with leave to amend.
*See* July 8, 2011 Order ("Order"), ECF No. 153.

On August 23, 2011, Plaintiff filed a First Amended Complaint ("FAC") alleging 20 causes
of actions against 39 named defendants on her own behalf.  The FAC names many of the same
Defendants identified in the original complaint. The Defendants named in the previous complaint
are grouped as follows. "County Defendants" include Alameda County; social workers Mary
Chew, Linda Fuchs, Tracy Fernandez, Bruce Jackson; and former Alameda County Counsel
Richard E. Winnie (now deceased).  "City Defendants," include the City of San Leandro and City
of San Leandro Police Department employees Officer Wong, Detective Luis Torres, Officer
DeCosta, and Officer Kamilah Jackson. "Plaintiff's Counsel Defendants," include Patrick
O'Rourke, Cheryl Smith, Lezley Crowell, Dennis Reid, and the Alameda County Bar Association.
Also named in the FAC is Geri Isaacson ("Isaacson"), J.H.'s elementary school principal, the
Alameda County Public Defenders' Office and the East Bay Children's Law Offices ("EBCLO").

In addition to these Defendants, Plaintiff added several new Defendants, who were not
included in the original complaint.  These Defendants include the Honorable Tani Gorre Cantil-
Sakauye, Chief Justice of the California Supreme Court; William Vickery, the Administrative
Director of the Office of the Courts of the Judicial Council; The Honorable Jon Rolefson, the
Presiding Judge of the Superior Court of the County of Alameda; the Honorable Trina Thompson,
the Presiding Judge of the Juvenile Dependency Department in Alameda County; Diana Dooley,
Secretary of the California Department of Health and Human Services; Toby Douglas, Director of
the California Department of Health Care Services; Will Lightborne, Director of the California
Department of Social Services; Lori Jones, Director of Alameda County Department of Social
Services; Roger Chan, executive in charge of EBCLO; Linda Yeps, executive of the Alameda
County Bar Association; and Alameda County Social Services employees.  Additionally, in the
caption, Plaintiff also named several parties without identifying these individuals or naming them

2

1    as parties within the FAC itself: Karen Benjamin, Susan Kotch, Sylvina Cooper, Jennifer Diers,

2    Nicole Garay, Kirsten Halbook, Shirley Lee-Andrade, Jim Mehlfeld, Valerie Patton, Akilah

3    Roberts-Brewer.

4           In the FAC, Plaintiff again asserts constitutional violations and violations of ICWA, 25

5    U.S.C. §§ 1901 et seq., via 42 U.S.C. § 1983, as well as a number of claims arising under state law.

6    Six groups of defendants filed motions to dismiss the First Amended Complaint, including

7    Isaacson, Alameda County Public Defender's Office, EBCLO, "City Defendants," "Plaintiff's

8    Counsel Defendants," and "County Defendants."  ECF Nos. 173, 175, 179, 180, 181, 191.  None of

9    the newly added Defendants filed motions to dismiss, as it does not appear that they were ever

10   served with the summons and complaint.  Plaintiff sought, and was granted, an extension to file an

11   opposition to Defendants' motions to dismiss.  ECF Nos. 187 & 190.  Instead of filing an

12   opposition, Plaintiff filed a motion to stay the proceedings.  ECF No. 204.  The motion to stay was

13   DENIED in a separate order.  Plaintiff did not file an opposition to Defendants' motions to dismiss.

14   The Court held a hearing on February 2, 2012, at which time Plaintiff opposed Defendants'

15   motions to dismiss.  After reviewing the briefing by the parties, the relevant case law, and the

16   parties' arguments at the hearing, the Court GRANTS Defendants' motions to dismiss.  Because

17   Plaintiff has previously been granted leave to amend and has failed to cure the deficiencies

18   identified in the previous Court order, Defendants' motions to dismiss are granted with prejudice.

19   Accordingly, the case management conference currently set for May 2, 2012 is VACATED.

20       **II.      BACKGROUND**

21           The facts relating to the events surrounding the removal of J.H. from Plaintiff's custody and

22   the subsequent dependency court proceedings as recounted in the FAC are almost identical to the

23   facts as alleged in the original complaint.  A summary of the events related to the removal of J.H.

24   from Plaintiff's custody are found in this Court's July 8, 2011 Order and will not be recounted in

25   detail here.

3

In addition to the allegations in the first complaint that J.H. was wrongly taken from Plaintiffs' custody, the additional factual allegations in the FAC challenge the adequacy of the entire Juvenile Dependency Court system, and specifically allege that the failures of the system violate her right to competent and effective counsel. *See* FAC 21-27, ¶¶ 14-26, 61-67, ¶¶ 134-55. As evidence of this inadequacy, Plaintiff asserts that the Dependency Representation, Administration, Funding, and Training program ("DRAFT") allows the State to underfund attorneys and incentivizes attorneys to handle more cases than they can effectively try. *See id.* at 21-22, ¶¶ 14-15. Plaintiff also claims that attorneys contracted under DRAFT are not properly trained. *See id.* at 25, ¶ 21. Plaintiff alleges that both state actors and private parties conspire to protect DRAFT because of the money it saves the state and the lucrative benefits it provides those contracted under it, despite its allegedly blatant ineffectiveness. *See id.* at 21-25, ¶¶ 14-21.

Additionally, the undersigned judge also presided over a related case in which Plaintiff, on behalf of the minor, brought an ICWA petition arising from the same events that give rise to the instant lawsuit. *See generally* J.H. v. Baldovinos, 10-CV-2507-LHK. The Court appointed counsel in the related case,[1] and summary judgment was granted in favor of Defendants in that matter. *See* J.H. v. Baldovinos, 10-CV-2507-LHK, ECF No. 232. Plaintiff has appealed the Court's grant of summary judgment in favor of Defendants, and the appeal is currently pending before the Ninth Circuit Court of Appeals. J.H. v. Baldovinos, 10-CV-2507-LHK, ECF No. 236, 239.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the

---

[1]  Additionally, Plaintiff has recently attempted to remove the ongoing state dependency court proceedings to federal court. *See* Jones et. al. v. J., 12-CV-00802-LHK. This case is now related to J.H. v. Baldovinos, 10-CV-2507-LHK. *See* ECF No. 247. This is not the first time that Plaintiff has attempted to remove the ongoing state dependency court proceedings. *See e.g.* J.H. v. Baldovinos, 10-CV-2507-LHK, ECF No. 55.

4

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl*. *Corp*. *v*. *Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v*. *Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  *Usher v*. *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis*. *Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v*. *Dep't. of Corr*., 66 F.3d 245, 248 (9th Cir. 1995). The rule favoring liberality in granting leave to amend is particularly important for pro se litigants.  *Lopez v*. *Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

### IV.    APPLICATION

#### A.  Dismissed Defendants

As an initial matter, the Court dismisses several Defendants from the FAC.  First, the Court's July 8, 2011 Order Granting Motions to Dismiss dismissed with prejudice those defendants who were sued based solely on their representation of J.H, including EBCLO and the Alameda County Public Defender's Office.  ECF. No. 153, p. 8-9.  Plaintiff's FAC again named EBCLO and the Alameda County Public Defender's Office despite the prohibition against amending Plaintiff's claims as to them.  *Id*.  Accordingly, EBCLO and the Alameda County Public Defender's Office are dismissed from this suit, with prejudice.

Second, it does not appear that the newly named Defendants have been served with a summons and complaint in this action.  The FAC was filed on August 23, 2011.  According to Federal Rule of Civil Procedure 4(m), the Defendants must be served with the summons and complaint within 120 days of filing the complaint.  Although it appears as though Plaintiff

5

United States District Court
For the Northern District of California

attempted to serve the complaint only on several of the new Defendants, a summons was never executed for the new Defendants. Plaintiff has failed to comply with Rule 4(m) by serving the new Defendants with both a summons and complaint or establishing good cause for Plaintiff's failure to do so. Therefore, the following Defendants are DISMISSED from this suit:[2] Tani Gorre Cantil-Sakauye, William Vickery, Jon Rolefson, Trina Thompson, Diana Dooley, Toby Douglas, Will Lightborne, Lori Jones, Roger Chan, Linda Yeps, Alameda County Social Services employees, Karen Benjamin, Susan Kotch, Sylvina Cooper, Jennifer Diers, Nicole Garay, Kirsten Halbook, Shirley Lee-Andrade, Jim Mehlfeld, Valerie Patton, and Akilah Roberts-Brewer.

Failure to timely serve pursuant to Rule 4(m) necessitates a dismissal as to those defendants without prejudice. However, in this case, Plaintiff has failed to allege any specific conduct by these Defendants that gives rise to claims for relief. In light of the fact that Plaintiff has failed to allege a factual basis for any claim as to each of these Defendants, or to otherwise state a claim for relief as explained below, dismissal of the newly added Defendants is with prejudice.

### B. Claims Subject to Abstention

Counts One through Six of the FAC generally allege that the California dependency court system is overburdened and under funded. As a result of these systematic failures, Plaintiff alleges that the court system violates her federal and statutory rights under 42 U.S.C. § 1983 (count one), and her rights pursuant to 42 U.S.C. § 1983 and the Indian Child Welfare Act ("ICWA"), 42 U.S.C. § 1912 (count two). Plaintiff also alleges that the funding of the court system violates Article 1, § 7 of the California Constitution (count three), California Welfare and Institutions Code ("WIC") § 218 (count four), WIC § 317(c) (count five), and WIC § 317.5(b) (count six). The County Defendants argue that the doctrine of abstention applies, and that these six counts should be dismissed.

---

[2] To the extent that these Defendants are named in specific causes of action, they are not discussed further in this order.

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

Federal courts may not entertain actions that seek to impose "an ongoing federal audit of state . . . proceedings." *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974); *Rizzo v. Goode*, 423 U.S. 362, 379–80 (1976); *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006). Federal courts "should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) (citing *O'Shea*, 414 U.S. 488; *Rizzo*, 423 U.S. at 379).

To the extent Counts One through Six request injunctive or declaratory relief regarding the DRAFT program, funding schemes for juvenile dependency proceedings, or the administration of the juvenile court system generally, this Court is required to apply the abstention doctrine and dismiss those claims. *E.T. v. Cantil-Sakauye*, __ F.3d __, 2012 WL 763541, at *2 (9th Cir. March 12, 2012) (per curiam) (quoting *O'Shea*, 414 U.S. at 500).

The Ninth Circuit recently applied the *O'Shea* abstention doctrine to a case presenting allegations strikingly similar to the allegations presented here. In *E.T.*, the plaintiffs alleged "crushing and unlawful caseloads" that frustrated the ability of dependency courts to "fairly and adequately hear their cases" and frustrated the ability of court appointed counsel to provide effective assistance of counsel. *Id.* at *1. Plaintiffs asserted claims under 42 U.S.C. § 1983 and sought declaratory and injunctive relief restraining future violations of plaintiffs' constitutional rights and an order "mandating that Defendants provide the additional resources required to comply with" recommended caseloads for court appointed attorneys. *Id.*

The Ninth Circuit held that the complaint was properly dismissed under *O'Shea* abstention. *See id.* at *2 (citing *O'Shea*, 414 U.S. at 500). In applying *O'Shea* abstention, the Ninth Circuit concluded that the declaratory relief sought would intrude on the administration of the dependency court because the case involved an assessment of "average attorney caseloads and the right to counsel," and because "the question is one of adequacy of representation, potential remediation might involve examination of the administration of a substantial number of individual cases." *Id.*

7

at *3. Thus, the Ninth Circuit concluded that the relief sought would amount to an ongoing federal audit of the state dependency court system. *Id.*

Plaintiff's new factual allegations and amended causes of action in Counts One through Six challenge the structure and funding system of the state dependency court system. As explained above, Plaintiff alleges that the DRAFT program allows the state to underfund attorneys, which leads to excessive case loads and systematic ineffective assistance of counsel for minors and their guardians. Moreover, Plaintiff seeks an order from this court enjoining Defendants from violating Plaintiff's rights by mandating additional resources to the court system in order to pay adequate attorney's fees. *See* FAC page 101. Thus, any injunctive or declaratory relief granted here would similarly require an ongoing audit of court administration and would violate the principles set forth in *O'Shea*. Accordingly, under *O'Shea* abstention, this Court dismisses Counts One through Six to the extent Plaintiff seeks declaratory and injunctive relief based upon these new claims.

The County Defendants argue that these causes of action should be dismissed in their entirety based on the abstention doctrine. However, abstention generally only applies to actions for injunctive and declaratory relief. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718–19 (1996). A court may not dismiss an action for damages on abstention grounds. *See id.* at 721. Therefore, the Court must consider whether Plaintiff seeks damages for each of the claims one through six and whether she has stated a claim.

### 1.   Federal Constitutional Claim (Count One)

Count One alleges that Defendants Chief Justice Cantil-Sakauye, Vickery, Judge Rolfeson, and Judge Thompson violated Plaintiff's procedural and substantive due process rights in violation of 42 U.S.C. § 1983 through excessive caseloads that lead to inadequate representation. Plaintiff requests a declaratory judgment that the DRAFT program violates California and federal law and requests additional injunctive relief as a remedy for violations alleged in Count One. ECF No. 158 (FAC 100-101). Count One explicitly accuses judicial officers, against whom the only relief

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

sought is declaratory and injunctive relief.  *Id.* at 61-64 ¶¶ 134-41, 100-101.  Accordingly, because Plaintiff does not seek damages under this claim, *O'Shea* abstention requires the Court to dismiss Count One.

## 2.  Section 1983 and ICWA (Count Two)

Count Two alleges that excessive caseloads in the Alameda County dependency court system render attorneys "unable to adequately competently or effectively represent the interest of the Indian Parents" and accordingly violates Plaintiff's right to competent counsel pursuant to 42 U.S.C. § 1983 and the Indian Child Welfare Act ("ICWA"), 42 U.S.C. § 1912.  At the hearing on the motion to dismiss, Plaintiff clarified that she only brings this claim against her former attorneys Crowell, Smith, Reid, and O'Rourke and the Alameda County Bar Association.  *See* Tr. of Feb. 2, 2012 Hrg. at 5:12-23.

Plaintiff's § 1983 claim against the court appointed attorneys was previously dismissed in this Court's July 18 Order.  The Court determined that Plaintiff had not stated a § 1983 claim against the attorney defendants because court appointed attorneys do not act under color of state law.  Order at 31 (citing *Miranda v. Clark Cnty.*, 319 F.3d 465, 469 (9th Cir. 2003)).  In *Miranda*, the Ninth Circuit considered § 1983 claims brought against an appointed public defender.  Even though he was "paid by government funds and hired by a government agency . . . his function was to represent his client, not the interests of the state or county."  *Id.*  Because he was performing the traditional function of a lawyer, he was not a state actor.  *Id.*

Plaintiff alleges that the attorney defendants were performing the traditional functions of lawyers while representing her (though she was unhappy with their performance).  Accordingly, Plaintiff cannot state a § 1983 claim against the individual appointed attorneys named in Count Two because, as a matter of law, they were not state actors while serving as her appointed counsel.  Thus, Count Two is DISMISSED.

## 3.  California Constitution (Count Three)

9

United States District Court
For the Northern District of California

Count Three alleges that the Defendants have violated Plaintiff's due process rights under the California Constitution, Article 1, § 7 by failing to provide "competent assistance of counsel with a caseload that ensures adequate representation." FAC ¶ 148. However, there is no private right of action for damages for violations of Article I, Section 7 of the California Constitution. *See Katzberg v. Regents of the University of California,* 29 Cal. 4th 300, 329 (2002); *Javor v. Taggart,* 98 Cal. App. 4th 795, 807 (2002) ("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution."). Plaintiff may not seek damages pursuant to Article I, Section 7 of the California Constitution, and *O'Shea* abstention applies to Plaintiff's claim for declaratory and injunctive relief. Accordingly, Count Three is DISMISSED.

### 4. Violations of Welfare and Institutions Code Sections 218, 317(c) and 317.5 (Counts Four Through Six)

Plaintiff's claims in Counts Four Through Six seek to enforce various provisions of the California Welfare and Institutions Code ("WIC"). Specifically, Plaintiff alleges that the overloaded dependency court system has led to several violations of WIC including the requirement that: (1) court appointed counsel "shall receive a reasonable sum for compensation and for necessary expenses," (2) court appointed counsel shall be provided to children in dependency proceedings, and (3) "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel," WIC §§ 218, 317(c), 317.5(a).

Defendants argue that WIC does not create a private right of action for damages. Def.'s Supplemental Br. in Supp. of Mot. to Dismiss at 3-4, *See* ECF No. 241. The Court agrees. California courts recognize that "a statute does not create a private right to sue except when the Legislature so intended." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 134 (1997); *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 305 (1988). "Thus when neither the language nor the history of a statute indicates an intent to create a new private

10

United States District Court
For the Northern District of California

right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader Ins. Co.*, 54 Cal. App. 4th at 133.  Plaintiff has not met this burden of establishing that WIC §§ 218, 317(c), and 317.5(a) create implied private rights of action.  The Court has not been able to identify any statutory language or legislative history that would suggest that the Legislature intended to allow a litigant to recover damages for violations of the Welfare and Institutions Code.  Nor would implying a private right of action likely further the stated purpose of the juvenile court law "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and protection of the public." WIC § 202(a).  It does not appear that the California Legislature has authorized a private right to sue for violations of WIC §§ 218, 317(c), and 317.5(a).  Accordingly, Counts Four through Six are DISMISSED.

       C.   <u>Time-Barred Claims</u>

           1.   <u>Fourteenth Amendment Claim Against San Leandro Police Officers and the San Leandro Police Department (Counts Eight and Ten)</u>

In Count Eight, Plaintiff alleges that City of San Leandro Police Officers Jackson, DeCosta, Torres, Wong unlawfully seized J.H. on December 19, 2006, and in doing so violated Plaintiff's right to privacy and familial rights.  Plaintiff's Fourteenth Amendment claim alleged in Count Eight of the FAC is substantially similar to Plaintiff's claims in Counts Two and Six of the original complaint.  In the July 8 Order, the Court dismissed this claim against the San Leandro officers because the claims were barred by the statute of limitations.   Specifically, the Court determined that the "[two year] statute of limitations under § 1983 begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action. . . . [Therefore,] Plaintiff had reason to know of J.H.'s seizure and medical

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

exam long before December 21, 2008." Order at 12 (citing *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 n.4 (9th Cir. 2004)).  The July 8 Order dismissed with prejudice Plaintiff's claims against the San Leandro Police Officers related to the seizure of J.H. because Plaintiff was aware of her claim in violation of her right to privacy and familial rights no later than January 2007.  *Id.*

Despite the fact that Plaintiff was not granted leave to amend this claim, she has alleged substantially the same claim against the San Leandro Police Officers based upon the seizure of J.H. on December 19, 2006.  Plaintiff has added factual allegations that the police officers "used the laws of California, designed to prevent 'perpetrators' from accessing victim information" to keep the Plaintiff from access to reports and findings.  FAC ¶¶ 3-4, pages 69-70.  Plaintiff also alleges that she was not able to identify against whom she was entitled to "seek vindication of her rights" until she obtained documents through a subpoena.

It appears that Plaintiff is attempting to establish that Defendants' conduct creates an ongoing violation of Plaintiff's Fourteenth Amendment rights in order to avoid the statute of limitations for her claims arising out of the December 19, 2006 seizure of J.H.  A plaintiff can plead an ongoing violation by showing "a systematic policy or practice that operated, in part, within the limitations period—a systematic violation."  *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 974 (9th Cir. 2010) (quoting *Douglas v. Cal. Dep't. of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001) (quotation marks and footnote omitted).  Furthermore, "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (citing *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir. 1975)).  Plaintiff's allegations, however, do not establish an ongoing violation.  The "systematic policy" alleged in the FAC is the San Leandro Police Officers' compliance with California law regarding the dissemination of reports and findings.  Thus, the

12

**United States District Court**
For the Northern District of California

basis of the cause of action is not continual unlawful acts, but rather one allegedly unlawful act based on the events of December 2006.

Alternatively, to the extent that Plaintiff's complaint could be construed as attempting to establish that her claims should not be barred by the applicable statute of limitation under the doctrine of equitable tolling, Plaintiff has failed to establish that equitable tolling should apply in this case.  A party asserting equitable tolling must demonstrate that: (1) she has been diligent in pursuing her rights, and (2) "'extraordinary circumstances beyond [her] control made it impossible to file the claims on time.'"  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004 (9th Cir. 2006) (quoting *Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991)); s*ee Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The doctrine is to be applied sparingly and is reserved only for "extreme cases," such as when the claimant has been tricked by an adversary into letting a deadline expire, an administrative agency's notice of the statutory period is clearly inadequate, or when the statute of limitations is not complied with solely due to defective pleadings.  *Scholar v. Pac. Bell*, 963 F.2d 264, 267–68 (9th Cir. 1992); *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Plaintiff has not adequately explained her failure to exercise due diligence in preserving her legal rights given that she must have been aware of her claims arising out of the removal of her son as of December 2006.  Although she alleges that she learned new information in November 2010, it is not clear how Plaintiff was diligent in pursuing her rights, or what other extraordinary circumstances may have kept her from filing her claims within the two year limitations period.  In a case such as this, courts are "generally unforgiving . . . when a late filing is due to [a litigant's] failure 'to exercise due diligence in preserving his legal rights.'"  *Scholar*, 963 F.2d at 268 (quoting *Irwin*, 498 U.S. at 96).  Thus, it does not appear from the FAC that equitable tolling applies.  Moreover, it is worth noting that this claim was dismissed without leave to amend in the July 18 Order.  Accordingly, Count Eight is DISMISSED.

Similarly, Count Ten appears to be a claim for *Monell* liability against the City of San Leandro Police Department.  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978).  A local government may not be sued under a theory of respondeat superior for injuries inflicted solely by its employees or agents.  *Monell*, 436 U.S. at 691; *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  Rather, a plaintiff must demonstrate that the government's official policy or custom was the "moving force" responsible for infliction of her injuries.  *Monell*, 436 U.S. at 694.  Because the only underlying constitutional tort Plaintiff has alleged against the San Leandro Police Officers is time barred, Plaintiff's *Monell* claim seeking to attach liability to the Officers' employer, the City of San Leandro Police Department, is also time barred.  Accordingly, Count Ten is also DISMISSED.

### 2.   Fourteenth Amendment Claim Against Principal Isaacson (Count Nine)

In Count Nine, Plaintiff alleges that Defendant Geri Isaacson, the McKinley School Principal, violated Plaintiff's right to privacy and familial rights by seizing J.H. and subjecting him to an interrogation, "without a warrant, parental consent, probable cause or exigent circumstances" and that Isaacson improperly "pressured a 7-year-old minor with leading questions seeking answers to fit her theory of what J.H. had experienced, in an area she had no expertise and without any provision for verification of her interview or her procedures used."  FAC ¶¶ 163, 165.

Defendant Isaacson argues that she is absolutely immune from suit because she is a mandatory reporter of abuse pursuant to Penal Code § 11172 and because Plaintiff's claim is barred by the statute of limitations.  The Court must reject Defendant Isaacson's first argument because it appears as though state immunity law does not apply to § 1983 claims.  This Court is bound by the law of the Ninth Circuit, which is clear that "[i]mmunity under § 1983 is governed by

14

**United States District Court**
For the Northern District of California

federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer,* 202 F.3d 1126, 1144 (9th Cir. 2000).  In *Wallis,* the Ninth Circuit reversed a district court that applied state statutory immunity to federal § 1983 constitutional claims that arose out of child abuse investigations.  *Id.* (citing *Martinez v. California,* 444 U.S. 277, 284 n.8 (1980)).

Plaintiff's claims against Defendant Isaacson, however, like her claims against the San Leandro Police Department, appear to be time barred.  As outlined above, the "[two year] statute of limitations under § 1983 begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." *Ventura Mobilehome Cmtys. Owners Ass'n,* 371 F.3d at 1052 n.4 (quoting *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002)) (quotation marks and alterations omitted).  Here, Plaintiff had reason to know of J.H.'s seizure before December 21, 2008.  Isaacson allegedly questioned J.H. and reported what she learned to the police on December 19, 2006.  FAC ¶¶ 34-46. Plaintiff alleges that on January 2, 2007 the Superior Court found that the allegations in the petition were true, and declared J.H. a dependent child of the state.  Plaintiff's allegations against Isaacson derive from the same common factual predicate – the December 19, 2006 seizure of J.H. – as the allegations against the San Leandro Police Officer Defendants.  These events all occurred almost four years prior to Plaintiff filing her Complaint.  Therefore, Plaintiff's claims against Isaacson are also time-barred, and Count Nine is DISMISSED.

D. Claims Subject to California Tort Claims Act

Defendants argue that Counts Eleven, Thirteen, Fourteen, and Fifteen should be dismissed because Plaintiff failed to comply with California's Tort Claims Act.  Count Eleven alleges malicious prosecution by Linda Fuchs and Mary Chew.  Count Thirteen alleges common law negligence against Alameda County, their Department of Social Services, and the City of San Leandro.  Count Fourteen alleges common law gross negligence against the Department of Social Services Defendants, Bruce Jackson, Mary Chew, Linda Fuchs and Tracey Fernandez.  Count

15

Fifteen alleges intentional infliction of emotional distress against Bruce Jackson, Mary Chew, Linda Fuchs, Tracey Fernandez, Lezley Crowell, Cheryl Smith, Dennis Reid, and Patrick O'Rourke.

### 1.   Claim Presentation Requirement

Under California Government Code § 945.4, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *State of California v. Superior Court*, 32 Cal. 4th 1234, 1239 (2004) (footnote omitted).  California Government Code § 950.2 requires that those who wish to sue a public employee based on acts or omissions within the scope of the employee's employment must first file a claim against that employee's public-entity employer.  *See Briggs v. Lawrence*, 230 Cal. App. 3d 605, 612-13 (1991); *see also Dennis v. Thurman*, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997) ("When defendants are public employees, the plaintiff must first submit a written claim to the public entity that employs them before filing a lawsuit seeking monetary damages for violations of California law." (citing Cal. Gov't Code §§ 945.4, 950.2)).  "Section 910 lists the information that must be included in a notice of claim." *Connelly v. County of Fresno*, 146 Cal. App. 4th 29, 37 (2006) (footnote omitted).  But so long as a claimant "has attempted to comply with the claim requirements," the substantial compliance test applies to determine whether a claim has been sufficiently presented to the public entity.  *Connelly*, 146 Cal. App. 4th at 38 (citing *Santee v. Santa Clara County Office of Education*, 220 Cal. App. 3d 702, 713 (1990)).  "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." *Id.*

As the Supreme Court of California has stated, "a plaintiff may arguably be able to satisfy the claim presentation requirement by alleging an appropriate excuse, such as equitable estoppel." *State of California v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1245 (2004) (citing *Ard v. County of Contra Costa*, 93 Cal. App. 4th 339, 346-47 (2001)).  In *Ard*, the court explained what may excuse

16

a plaintiff from satisfying the claim presentation requirement: "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." *Ard*, 93 Cal. App. 4th at 346-347 (quoting *John R. v. Oakland Unified School Dist.*, 48 Cal. 3d 438, 445 (1989)) (quotation marks omitted).

In the July 8 Order dismissing Plaintiff's original complaint, the Court found that the Plaintiff's failure to comply with the timely claim presentation requirement under the California Tort Claims Act barred her state common law claims against the public entities and employees described above. Although the July 8 Order granted the motions to dismiss Plaintiff's state law claims against government entities, Plaintiff was given leave to amend to allege facts demonstrating or excusing her compliance with the presentation requirement. *See* Order at 20. However, the allegations contained in these counts are identical, or substantially identical, to the claims presented in the original complaint.

Plaintiff still does not allege that she filed a claim presentation with any of the entities against which she now brings suit. Nor do Plaintiff's allegations that she "complained" to several governmental entities establish that equitable estoppel should apply. FAC ¶¶ 5-9. It is unclear based on the allegations what exactly she complained about and what relief she sought from the various agencies. Moreover, Plaintiff does not allege that any of the government agents performed some affirmative act that prevented her or deterred her from filing her claim. Thus, Counts Eleven, Thirteen, Fourteen, and Fifteen are dismissed as to all employees subject to the claim presentation requirement.

The Tort Claims Act applies only to public entities or their employees acting within the scope of their employment. Most of the defendants named in the FAC are public entities or their employees and the FAC alleges facts showing that all of these individuals were public employees acting in the scope of their employment during the alleged acts. In the course of briefing, the panel

17

attorneys – Crowell, Reid, Smith, and O'Rourke – and the Alameda County Bar Association indicated that they were independent contractors not subject to the California Tort Claims Act. Therefore, the claim presentation requirement applies to all of the Defendants named in Counts Eleven, Thirteen, Fourteen, and Fifteen, except Defendants Crowell, Reid, Smith, O'Rourke and the Alameda County Bar Association, who have been named in Count Fifteen.

## 2.   Failure to State a Claim

To the extent that Plaintiff alleges a claim against her panel attorneys for intentional infliction of emotion distress, these Defendants have acknowledged that they are independent contractors not subject to the California Tort Claims Act.  Nonetheless, Crowell, Smith, Reid, and O'Rourke argue that Plaintiff has failed to state a claim against them for intentional infliction of emotional distress. [3]

In order to state a claim for intentional infliction of emotional distress, Plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations omitted).  "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1050-51 (internal quotation marks omitted).

The allegations in the FAC do not meet the elements of intentional infliction of emotional distress as to Defendants Crowell, Smith, Reid, and O'Rourke.  Plaintiff's allegations of her attorneys' conduct establish, at worst, attorney malpractice.  Plaintiff alleges that her panel

---

[3]  Plaintiff has also failed to state a claim against the Alameda County Bar Association for negligence.  Plaintiff's negligence claim alleges that the Defendants fabricated claims of abuse, that Defendants failed to investigate, and other allegations.  However, the only allegation related specifically to the ACBA is that the ACBA contracted with the County to provide attorneys to indigents in dependency matters. FAC ¶ 35.  The allegations that the ACBA was negligent are conclusory and unsupported by the factual allegations.  Accordingly, Plaintiff's claim for negligence against the ACBA is DISMISSED.

18

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

attorneys generally failed to make filings on her behalf, to investigate for her, or meet with her and that these failings amounted to ineffective assistance of counsel and malpractice. *See generally* FAC ¶¶ 28-31; 87-88; 97-103; 107-114. These allegations of negligent attorney malpractice do not rise to the level of conduct that is so "outrageous" as to "exceed all bounds of that usually tolerated in a civilized community." *See, e.g. Wolk v. Green*, 516 F. Supp. 2d 1121, 1132 (N.D. Cal. 2007) (granting motion to dismiss intentional infliction of emotional distress claim arising from negligent attorney conduct).

Moreover, Plaintiff has failed to allege facts that establish that she suffered severe or extreme emotional distress *as a result of* the panel attorney's intentional conduct. Plaintiff alleges that "[a]s a result of the Defendants' extreme and outrageous conduct, the Plaintiff was damaged." FAC ¶ 26. However, Plaintiff has failed to provide a factual basis establishing that the panel attorneys' conduct was a proximate cause of Plaintiffs' "severe or extreme emotional distress." Accordingly, Plaintiff's state law claims for malicious prosecution, negligence, gross negligence and intentional infliction of emotional distress are DISMISSED.

### D. *Monell* Liability (Count Twelve)

Plaintiff's Count Twelve attempts to state a claim for *Monell* liability against Alameda County, the Alameda County Department of Social Services, the City of San Leandro and the Alameda County Bar Association,[4] (the "Employer Defendants" for purposes of this Count), based on the actions of their "Employee Defendants" (social workers Fuchs and Chew; Department of Social Services supervisor Jackson; police officers Jackson, DeCosta, Wong, Torres; appointed counsel for Plaintiff Crowell, Smith, Reid, O'Rourke). Plaintiff alleges that the Employer Defendants "were all aware that they failed to adequate[ly] train and supervise their employees to competently interview children" about whom allegations of abuse had been made and that "[i]n the

---

[4] It appears as though the Alameda County Bar Association cannot be liable under *Monell* as it is not a government entity.

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

case of appointed attorneys for the indigent, to provide proper compensation and freedom of choice in defense actions to the attorneys required to have the freedom to exercise independent judgment . . . ." FAC ¶ 175.  Plaintiff asserts that her appointed attorneys were paid under a fixed fee agreement that she asserts violated Welfare and Institutions Code § 218, while assigning caseloads "over and above any safe recommendations preventing the attorneys from having the time to consult or competently represent their clients."  FAC ¶ 180.

Plaintiff also alleges (without specifics) that the Employer Defendants "had all learned of previous incidents involving the [Employee Defendants] . . . in which these Defendants allegedly violated the statutory and Constitutional rights of other citizens" and that these allegations are "likely to have additional evidentiary support after a reasonable opportunity for further investigation and discovery."  FAC ¶¶ 176-77.  Plaintiff alleges that the Employer Defendants did not discipline their employees, but instead "tacitly authorized" their "improper conduct."  FAC ¶ 179.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690.  A local government may not be sued under a theory of respondeat superior for injuries inflicted solely by its employees or agents.  *Monell*, 436 U.S. at 691; *Anderson*, 451 F.3d at 1070.  Rather, a plaintiff must demonstrate that the government's official policy or custom was the "moving force" responsible for infliction of her injuries.  *Monell*, 436 U.S. at 694.  Under *Monell*, a plaintiff may establish municipal liability by demonstrating that "(1) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that

20

authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

In "limited circumstances," the failure to train municipal employees can serve as the policy underlying a *Monell* claim. *Bd. of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 407 (1997). "If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*

In the July 2011 Order, the Court granted Defendants' motion to dismiss Plaintiff's *Monell* claim. In ruling on Defendants' motion to dismiss, the Court explained "Plaintiff has not adequately alleged what her constitutional injury or injuries were. Plaintiff has also failed to tie those injuries to 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity' or to plead that the failure to train employees resulted in specific constitutional violations and a resulting deliberate indifference to those constitutional violations. Finally, while Plaintiff alleges that appointed counsel were systematically underpaid and overworked, she does not assert any injury flowing from this asserted policy." Order at 23. Plaintiff was given leave to amend her *Monell* claim. Count Twelve of the FAC is substantially similar to Count Eleven in the original complaint. In addition, Plaintiff added allegations of unconstitutional procedures employed in the Juvenile Court that are identical to allegations in Count Eight of the original complaint. Thus, Plaintiff has not materially amended her complaint to state a claim for a *Monell* violation.

Plaintiff still has failed to adequately state a claim for *Monell* liability for any of the defendants named in this Count. Plaintiff has failed to tie her constitutional injuries to "a longstanding practice or custom which constitutes the standard operating procedure of the local

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

government entity" or to plead that the failure to train employees resulted in the specific

constitutional violations and a resulting deliberate indifference to those constitutional violations.

As to the allegations of the underlying constitutional violations, Plaintiff's allegations are

conclusory, stating (for example) that the unconstitutional procedures included "the subornation of

perjured testimony by witnesses for the State" and "the creation of false or fraudulent

documentation to buttress and support the State's specious case." FAC ¶ 186. The Court is not

required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,

or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. The Court finds that

Plaintiff has not adequately alleged facts to support this claim. As currently pled, it is unclear what

information was allegedly falsified, what testimony was perjured, or what exculpatory evidence

was withheld. Though the "Factual Allegations" section of the Complaint contains some facts that

are presumably relevant to this claim (such as Plaintiff's allegation that the January 16, 2006

medical exam of J.H. produced exculpatory evidence which was never disclosed to the Superior

Court), Plaintiff has not specified the facts that this claim is based upon, so that the defendants

implicated in Count Twelve know what they are defending against. "[A]llegations in a complaint

or counterclaim . . . must contain sufficient allegations of underlying facts to give fair notice and to

enable the opposing party to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th

Cir. 2011). Accordingly, Count Twelve is DISMISSED.

E.   Section 1983/ICWA (Count 7)

In Count Seven, Plaintiff alleges that Alameda County and the Alameda County

Department of Social Services deprived Plaintiff of her Federal Constitutional Rights in violation

of 42 U.S.C. § 1983. Plaintiff appears to allege (1) improper notice to the Indian tribe in violation

of ICWA, (2) improper placement of Indian children in violation of ICWA. It is impossible to tell,

based on the facts as alleged, what specific actions by the Defendants resulted in a deprivation of

22

her rights.  Without sufficient factual allegations, it is not possible for Defendants to defend against this claim.

The one allegation specific to Plaintiff appears to be barred by the two-year statute of limitations applicable to § 1983 actions.  *Canatella v. Van de Kamp*, 486 F.3d 1128, 1130 (9th Cir. 2007); Cal. Code Civ. P. 335.1; *see also Doe v. Mann*, 285 F. Supp. 2d 1229, 1241 (N.D. Cal. 2004), *aff'd on other grounds*, 415 F.3d 1038 (9th Cir. 2005).  To the extent that Count Seven can be interpreted as an allegation that Defendants failed to return J.H. to her custody pursuant to a December 2006 agreement, this claim is time-barred as of December 2008.  Moreover, Plaintiff would have been aware of the claim immediately, and thus the cause of action would have accrued, as of December 2006.  Therefore, Count Seven is DISMISSED.

F.    Invasion of Privacy (Count 16)

Plaintiff brings Count Sixteen against Officers Jackson, DeCosta, Wong, Torres, the Department of Social Security Defendants, Bruce Jackson, Karen Benjamin, Mary Chew, Linda Fuchs, and Tracey Fernandez.  In Plaintiff's Count Fifteen, she asserts that all Defendants "agreed and conspired to manipulate J.H. . . . into the role of . . .[a] victim, and then neglecting to inform any present or subsequent judicial officer of the months and months of such manipulation or of the exculpatory evidence that the minor had never been [subject to misconduct] as alleged."  FAC ¶ 222.  Plaintiff also alleges in Count Sixteen that Defendants created false evidence of abuse in their reports to the Superior Court, and thereby violated her right to privacy under the First and Fourteenth Amendments.[5]

In a context similar to the case at hand, the Ninth Circuit held that "deliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth

---

[5] Some of the allegations in Count Sixteen mirror the allegations in other claims related to the seizure of J.H. in December 2006.  To the extent that Plaintiff seeks to state a claim based on those events, Plaintiff's claim is time-barred for the reasons discussed above.  Additionally, to the extent that Plaintiff attempts to bring a state law claim, this claim is barred by the California Tort Claims Act for the reasons stated above.

23

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Amendment when a liberty or property interest is at stake." *Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101, 1108 (9th Cir. 2009). "To sustain a deliberate fabrication of evidence claim," the Ninth Circuit has "held that a plaintiff must, 'at a minimum, point to evidence that supports at least one of . . . two propositions.'" *Costanich,* 627 F.3d at 1111 (quoting *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)). Under *Devereaux,* a plaintiff must show that "Defendants [either] continued their investigation of plaintiff despite the fact that they knew or should have known that [she] was innocent" or "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Costanich,* 627 F.3d at 1111 (quoting *Devereaux,* 263 F.3d at 1076) (quotation marks and brackets omitted).

The allegations in Count Sixteen are largely identical to the claims found in Count Fifteen of the original complaint. Plaintiff was granted leave to amend to cure the deficiencies in her pleadings as to her claims in Count Sixteen and has failed to do so. Plaintiff's allegations are still too conclusory, stating (for example) that the unconstitutional procedures included "[t]he development of fabricated claims of . . . abuse," and "the subornation of perjured testimony by witnesses for the State." The Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d at 1055. The Court finds that Plaintiff has still not adequately alleged facts to support this claim. As currently pled, the defendants have no way to know what information was allegedly falsified, what testimony was perjured, or what exculpatory evidence was withheld. "[A]llegations in a complaint or counterclaim . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr,* 652 F.3d at 1216. Accordingly, Count Fifteen is DISMISSED.

G.  <u>Conspiracy to Deprive Right to Counsel (Count 17)</u>

24

United States District Court
For the Northern District of California

Count Seventeen alleges that Defendants Crowell, Smith, Reid, and O'Rourke conspired to deprive Plaintiff of her right to competent counsel in violation of 42 U.S.C. § 1985(3).  In order to state a claim for conspiracy under 42 U.S.C. § 1985(3) a Plaintiff must allege: "the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; an act in furtherance of the conspiracy; and a resulting injury."  *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998).  A plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.  *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 835 (1983).

Although elsewhere in the Complaint Plaintiff alleges that she is a member of a Native American Tribe, she does not allege that any defendant treated her differently from others similarly situated based on any impermissible classification, that any defendant acted with discriminatory intent in applying the classification, or that she suffered injuries resulting from such a classification.  Indeed, the allegations regarding the attorney mistreatment suggest that to the extent her attorneys were deficient in their performance, they were systematically deficient regardless of membership in a protected class.  Although Plaintiff has made conclusory allegations of harmful treatment, her failure to allege any *disparate* treatment is fatal to her claim.  Accordingly, Count Seventeen is DISMISSED.

H.  Section 1983 Against Richard Winnie (Count 18)

Plaintiff brings Count Eighteen against Richard Winnie, the former County Counsel for Alameda County.  Plaintiff alleges that Winnie had policies in place that directly caused unconstitutional conduct by "assistant County Counsels."  FAC ¶ 241.  Plaintiff asserts that Winnie failed to train his subordinates to provide exculpatory evidence to "the opposition" pursuant to

25

*Brady v. Maryland*, 373 U.S. 83 (1963).[6]  Plaintiff asserts that Winnie was aware that the lack of training would lead to improper conduct, including "allegations of . . . abuse [based on] inadmissible hearsay," and that he "acted with deliberate indifference" to the rights of families involved in child custody determinations.  FAC ¶ 242.

In its July 8 Order, the Court found that Plaintiff had failed to state a claim against Richard Winnie.  Plaintiff was granted leave to amend to adequately plead facts to establish that Plaintiff was deprived under color of law of a federally secured right.  Order at 28-29.  Plaintiff has failed to materially amend her complaint as to her claim against Richard Winnie.  Count Eighteen in the FAC is nearly identical to her allegations against Winnie in Count Eighteen of the original complaint.

Plaintiff's claim still fails to state a claim against Winnie.  From Count Eighteen itself, it is not possible to tell how Winnie's policies caused Plaintiff's alleged injuries.  The alleged injuries appear to have been caused by social workers who allegedly withheld exculpatory evidence and made false statements in connection with the child dependency proceedings.  The Complaint fails to tie any policies enacted by Winnie (alleged to be County Counsel at the time) to the actions of the social workers.  In fact, Plaintiff's allegations against her attorneys suggest that they could not have withheld any exculpatory evidence, because they failed to discover it.  For example, Plaintiff asserts that attorney Crowell "never . . . sought review of the medical records, nor did she consult with a medical expert."  FAC ¶ 66.  Since the only exculpatory evidence Plaintiff has identified is the medical exam of J.H. performed at Children's Hospital, it is not clear how her attorney could have withheld this evidence if Plaintiff also contends that she was not aware of it.  And it is even less clear how any policy set forth by Winnie as County Counsel could have resulted in such a withholding.

---

[6] It is not well-established that the *Brady* rule applies to child dependency proceedings.  *See Clarke v. Upton,* No. CV-F-07-888 OWW/SMS, 2009 U.S. Dist. LEXIS 44045 at *52 (E.D. Cal. May 26, 2009).

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

As stated in the July 8 Order, Plaintiff's Count Eighteen is simply too vague to state a claim. Order at 28-29. "[A]llegations in a complaint or counterclaim . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d at 1216. Plaintiff's incorporation of all the preceding paragraphs in the Complaint is not sufficient to put Defendants on notice of the basis for this claim. Accordingly, Count Eighteen is DISMISSED.

    I.  <u>Attorney Malpractice Claims</u>

        1.  <u>Attorney Malpractice/Civil Rights (Count 19)</u>

Count Nineteen of Plaintiff's FAC is titled "Attorney Malpractice" and "Civil Rights Violations" and is substantially the same as Plaintiff's Count Nineteen in the original complaint. As the title suggests, the claim appears to be a hybrid of attorney malpractice based on state law and a § 1983 claim based on the same underlying allegations. In this Count, Plaintiff names her appointed attorneys (Crowell, Smith, Reid, and O'Rourke). To the extent that Plaintiff is stating a claim for attorney malpractice, that claim will be addressed below, as Plaintiff has pled a separate cause of action against the same defendants for state law malpractice.

To the extent Count Nineteen asserts a § 1983 claim against the appointed attorneys, as explained above, the law is clear that such attorneys do not act under color of state law. *Miranda*, 319 F.3d at 469. In *Miranda*, the Ninth Circuit considered § 1983 claims brought against an appointed public defender. Even though he was "paid by government funds and hired by a government agency . . . his function was to represent his client, not the interests of the state or county." *Id.* Because he was performing the traditional function of a lawyer, he was not a state actor. *Id.* Plaintiff alleges that her appointed counsel were performing the traditional functions of lawyers while representing her (though she was unhappy with their performance). In fact, Count Nineteen is based on Plaintiff's allegations that her attorneys failed to "file any action" or "obtain exculpatory evidence" while representing her. Accordingly, Plaintiff cannot state a § 1983 claim

27

against the individual appointed attorneys named in Count Nineteen because, as a matter of law, they were not state actors while serving as her appointed counsel. Plaintiff argues that "by participating in contracts under the DRAFT program," the appointed counsel acted under color of state law. The Ninth Circuit's finding that even a full-time public defender "paid by government funds" is not a state actor rebuts Plaintiff's argument. Thus, the portion of Count Nineteen based on § 1983 is DISMISSED.

### 2.   Attorney Negligence and Misfeasance (Count 20)

Count Twenty asserts attorney negligence and misfeasance against the Alameda County Bar Association and the individual appointed attorneys Crowell, Smith, Reid, and O'Rourke. As explained previously, these individuals are not state agents or employees and thus are not subject to the California Tort Claims Act. Accordingly, Plaintiff's failure to meet the claim presentation requirement is not fatal to her claims against these Defendants.

### a.   Attorney Crowell

Lezley Crowell argues that Plaintiff's claims are time-barred as to her. Plaintiff alleges that Crowell's representation of Plaintiff ended as of January 14, 2008, after Plaintiff expressed her dissatisfaction with Crowell to the Superior Court through a "verbal *Marsden* motion" on December 13, 2007. Because Plaintiff complained to the Superior Court about Crowell on December 13, 2007, and the Superior Court interpreted this as a request to replace Crowell as Plaintiff's appointed counsel, it appears that as of this date Plaintiff was aware of the facts constituting her malpractice claim against Crowell. California provides a one-year statute of limitations for attorney malpractice claims. Cal. Code Civ. Proc. § 340.6. Accordingly, Crowell argues that Plaintiff's claim against her accrued at least by January 14, 2008, when another attorney was appointed to represent Plaintiff, and that the claim is now time-barred.

California Code of Civil Procedure also provides for the applicable tolling doctrines. Section 340.6 states that:

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:
(1) The plaintiff has not sustained actual injury.
(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.
(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.
(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

Plaintiff was granted leave to amend her complaint to allege facts establishing that one of the tolling principles identified above applies such that her claims against attorney Crowell are not time barred. Plaintiff has failed to do so. Plaintiff has still not identified any specific reasons why these exceptions should apply. Accordingly, Plaintiff's claims against attorney Crowell for malpractice are DISMISSED.

b. Attorneys Smith, Reid, and O'Rourke

The remaining three attorneys and the Alameda County Bar Association argue that the malpractice claims against them should be dismissed on public policy grounds. Analogizing dependency court attorneys to criminal defense attorneys, the remaining Defendants argue that in order to state a malpractice claim against a criminal defense attorney a plaintiff must plead and prove actual innocence established through post-conviction relief. *See* Crowell, Smith, Reid, O'Rourke, and ACBA Motion at 17. By analogy, the attorney defendants argue that "Plaintiff should be required to establish reversal of the decision of the dependency court prior to proceeding with her attorney malpractice claims." *Id.*

The California Supreme Court, invoking policy considerations, has held that "in a criminal malpractice action actual innocence is a necessary element of the plaintiff's cause of action." *Wiley v. County of San Diego*, 19 Cal. 4th 532, 545 (Cal. 1998). The Supreme Court again emphasized those public policy considerations in *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194 (2001). The Supreme Court expressed concern that "permitting a convicted criminal to pursue a

29

legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." *Wiley*, 19 Cal. 4th at 537 (citations omitted).

Defendants analogize Plaintiff's submission to a petition agreeing that J.H. was a child described by Welfare and Institutions Code § 300 to a plea in a criminal case. *See* Crowell, Smith, Reid, O'Rourke, and ACBA Motion at 19-20. Beyond this analogy, Defendants also note that in both criminal cases and dependency cases parties have "a right of appeal and a right to petition for writ of habeas corpus for ineffective assistance of counsel." *Id.* at 20. Finally, Defendants argue that if Plaintiff is allowed to continue with her malpractice claims, it will result in multiple trials of identical issues since Plaintiff's ICWA case already makes a determination as to ineffective assistance of counsel. *Id.* at 20. Defendants' reasoning, however, is unpersuasive. The Court has found no authority, and Defendants have cited no case, adopting the additional requirement of proving actual innocence, or by analogy reversal of the original dependency court decision to remove the child, to attorney malpractice claims arising out of child dependency hearings. Moreover, the policy considerations underlying the rule in the criminal context – to prevent a criminal defendant from profiting by his own wrongdoing – are less applicable in the juvenile dependency context. Although Plaintiff need not establish reversal of the juvenile dependency order, Plaintiff must still plead sufficient facts to establish a claim for attorney malpractice as to attorneys Reid, Smith, and O'Rourke.

In California, "[t]he elements of a cause of action for attorney malpractice are: (1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage." *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1621 (1994) (citing *Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1355 (1992)).

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

Plaintiff satisfactorily pleads the first element, duty of an attorney, as to attorneys Smith, Reid, and O'Rourke.  In the FAC, Plaintiff alleges that each attorney "failed to conform to the ethics of their profession," and that they "owed Plaintiff a duty of professional care."  EFC No. 158, ¶¶ 27, 156. While not explicit about exactly what the duty of an attorney is, these statements indicate that there is a duty that attorneys must sufficiently perform.

Plaintiff also pleads the second element, breach of duty.  Throughout the FAC, Plaintiff implies many breaches by pointing out failures, inactions, and deficiencies on the part of the attorneys.  *See, e.g.*, EFC No. 158, ¶ 25 (alleging that attorneys "obstructed Plaintiff's efforts to seek both competent counsel and to correct the abuses to her family"), ¶ 251 (alleging that attorneys "condoned [Crowell's] actions" "by their direct refusal to correct her gross errors") ¶ 252 (alleging that attorneys "failed to file an Application to dismiss, a 388 Petition or for writ of habeas corpus"), ¶ 253 ("Attorneys failed to take the necessary steps to secure the evidence or for an application to dismiss or for a writ of habeas corpus."), ¶ 254 (alleging that attorneys' failures were "negligent and fell below the proper standard of care").

To plead the third element, proximate cause, Plaintiff "must allege facts establishing that, '*but for* the alleged malpractice, it is more likely than not the plaintiff would have obtained a more favorable result.'"  *Charnay v. Cobert*, 145 Cal. App. 4th 170, 179 (2006) (quoting *Viner v. Sweet*, 30 Cal. 4th 1232, 1244 (2003)) (italics in original).  "[T]he plaintiff need only introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."  *Viner*, 30 Cal. App. 4th at 1242 (citations omitted).

Plaintiff has not adequately pled the third element of causation with respect to her claims against Attorneys Smith, Reid, and O'Rourke.  Attorneys Smith, Reid, and O'Rourke represented Plaintiff during the six-month status review hearings after the decision to remove J.H. had already been made.  Plaintiff's claims against Reid, Smith, and O'Rourke appear to relate to their failures

31

United States District Court
For the Northern District of California

of representation in her attempt to reunify with the minor. Plaintiff has not alleged that Plaintiff's

son would have been returned to her custody had the attorneys not engaged in the alleged

malpractice, nor has she provided factual allegations which would support such an inference.[7] *See,*

*e.g.*, FAC, EFC No. 158 at ¶¶ 29-31. Therefore, the Court finds that Plaintiff has failed to state a

claim for relief under attorney malpractice.

  J.  <u>Leave to Amend</u>

   The Court will generally grant leave to amend to allow a plaintiff, especially one

proceeding *pro se*, at least one opportunity to remedy deficiencies in the complaint. *See* Fed. R.

Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Lopez*, 203 F.3d at

1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was

made, unless it determines that the pleading could not possibly be cured by the allegation of other

facts."). However, leave to amend may be denied if allowing amendment would unduly prejudice

the opposing party, cause undue delay, or be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512

F.3d 522, 532 (9th Cir. 2008). Furthermore, this Court's "'discretion to deny leave to amend is

particularly broad where plaintiff has previously amended the complaint.'" *Cafasso, U.S. ex rel. v.*

*Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Ascon Props., Inc. v.*

*Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

   Plaintiff was granted leave to amend once before, but has failed to cure the deficiencies

identified in the first complaint. Indeed, for many causes of action, Plaintiff did not amend her

causes of action at all. The Court finds that granting Plaintiff leave to file a Second Amended

Complaint against Defendants, particularly where Plaintiff has already had an opportunity to

---

[7] It is worth noting that not only did Plaintiff fail to allege that she would have likely obtained a more favorable result but for the alleged attorney malpractice, it is unlikely that she would be able to establish her claim as a factual matter. In light of the Court's order granting summary judgment in favor of Defendants in the related case, J.H. v. Baldovinos, 10-CV-2507-LHK, Plaintiff will likely be unable to prove that she would have received a more favorable outcome, i.e. reunification with the minor, but for the alleged malpractice. *See* Order at 32-38, J.H. v. Baldovinos, 10-CV-2507-LHK, ECF No. 232.

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

litigate similar claims in a separate action before this Court, would unduly prejudice Defendants and would likely also be futile.  Accordingly, Plaintiff's FAC is DISMISSED WITH PREJUDICE. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 30, 2012

_____
LUCY H. KOH
United States District Judge

Case No. 10-CV-05797-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California